**O'BRIEN & GERE ENGINEERS, INC.**

v.

**Khalil TALEGHANI, et al.**

**Civ. A. No. 79-4309.**

United States District Court,
E. D. Pennsylvania.

May 18, 1982.

Richard R. Rulon, Bradford F. Whitman, Philadelphia, Pa., for plaintiff.

Herbert G. Schick, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

The plaintiff O'Brien & Gere Engineers, Inc. (O&G) brought this action against defendant Khalil Taleghani, et al. to recover contract damages for engineering services rendered by the plaintiff to Taleghani-Daftary (T–D), a business entity with which the defendant was associated. On October 29, 1981, following a non-jury trial, I issued my findings of fact and conclusions of law. *See O'Brien & Gere Engineering, Inc. v. Taleghani,* 525 F.Supp. 750 (E.D.Pa.1981). Before me is plaintiff's motion to amend the findings which defendant opposes and defendant's objections to the form of judgment submitted by the plaintiff. I will grant plaintiff's motion and, to the extent they are still pertinent following the amendment, deny defendant's objections. The following memorandum constitutes my amended findings in narrative form, discussion and conclusions of law.

I adhere to my previous finding that the defendant is liable as a partner by estoppel. I also adhere to my previous finding that the parties specifically agreed that interest would be due if the principal was unpaid on October 31, 1979 even though the principal may not have been due at that time.

On the issue of what was the obligation of the defendant under the March 31 Letter Agreement (March Agreement), I now revise and refine my findings. The March Agreement provided "Taleghani-Daftary agrees to make payments to O'Brien & Gere Engineers, Inc. in the amount of said $157,-755.19 within fifteen days of the availability of funds . . . ." At trial, the defendant urged that funds were available within the meaning of this language only when T–D

had sufficient funds to pay the debt *as a result of* receiving payment from the Iranian government. Implicit in defendant's argument was the contention that the availability of funds from the Iranian government was a condition upon the obligation of the defendant to pay. The plaintiff argued that the term meant that the obligation was payable whenever T–D or its putative partners had funds available *from any source* sufficient to pay the debt. Because defendant conceded that he had personal funds available in the amount of the debt at the time he signed the March agreement, plaintiff argued that the debt was immediately due. The testimony of plaintiff's witness, Mr. Johnson, refined this theory slightly. He testified that he understood the agreement to permit the defendant a grace period within which to pay the debt. At trial, however, counsel did not focus upon the issue of whether the term "availability of funds" was in fact a condition of the obligation. I now conclude that the plaintiff is correct that the obligation was unconditional and the contract permitted the defendant a grace period or reasonable time within which to pay. I reach this conclusion not because I accept the interpretation of the phrase "availability" urged by the plaintiff at trial, but rather, because I find that the phrase was not intended as a condition.

To clarify, I adhere to my previous finding that the term means availability of funds occasioned by payment from the Iranian government. I adhere to my finding that it does not mean available from any source. However, despite the fact that the phrase identified a specific source, I do not find that payment to the defendant from that source was a condition upon the defendant's obligation to pay the plaintiff. Rather this language fixed the time the debt, an unconditional obligation, would be paid. That the event selected has not occurred does not excuse the defendant's performance. Performance of the defendant's unconditional obligation is due if a reasonable time has passed.

■ As the defendant correctly notes, no particular words are required to create a condition. By express agreement, the parties may make any event a condition precedent to either party's performance. It is a question of interpretation whether the parties have agreed that particular language creates a condition. To ascertain the manifest intention of the parties, the court looks to the language of their agreement, the surrounding circumstances, the situation of the parties, and the objects they had in view. *See In re Carter*, 390 Pa. 365, 134 A.2d 908, 912 (1957).

■ Where the issue before the court is whether a term of a contract is a condition, the court will examine the language of the term itself. If the language is not free from doubt and the oral testimony is contradictory, certain conventions of contract interpretation may guide the court. *See* Restatement (Second) Contracts § 227 (1981). Conditional promises are not favored by the courts. *Byler v. Great American Insurance Company*, 395 F.2d 273, 276 (10th Cir. 1968); *Thomas J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655, 659 (6th Cir. 1962). The Second Restatement of Contracts provides: "In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." Restatement (Second) of Contracts § 227(1). The comment to § 227 observes that

[t]he policy favoring freedom of contract requires that, within broad limits . . . the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture. For example, under a provision that a duty is to be performed "when" an event occurs, it may be doubtful whether it is to be performed only if that event occurs, in which case the event is a condition, or at such time as it would ordinarily occur, in which case the event

is referred to merely to measure the passage of time. In the latter case, if the event does not occur some alternative means will be found to measure the passage of time, and the non-occurrence of the event will not prevent the obligor's duty from becoming one of performance.

Two illustrations to § 227 of the Restatement are helpful:

1. A, a general contractor, contracts with B, a subcontractor, for the plumbing work on a construction project. B is to receive $100,000, "no part of which shall be due until five days after Owner shall have paid Contractor therefor." B does the plumbing work, but the owner becomes insolvent and fails to pay A. A is under a duty to pay B after a reasonable time.

2. A, a mining company, hires B, an engineer, to help reopen one of its mines for "$10,000 to be payable as soon as the mine is in successful operation." $10,000 is a reasonable compensation for B's service. B performs the required services, but the attempt to reopen the mine is unsuccessful and A abandons it. A is under a duty to pay B $10,000 after the passage of a reasonable time.

Restatement (Second) of Contracts, *supra*, at 176.

■ I find that the import of the availability term is not clear from the contract itself. Guided by the precepts discussed above and based upon the testimony previously presented, I conclude that the term was not intended to be a condition.

The relationship of these parties is much like that of contractor and subcontractor. T–D was a consultant to the Iranian government on the construction of water resource projects. T–D subcontracted to plaintiff engineering work required as part of its consulting assignments. As illustrated by the Restatement, in this context it is ordinarily the party directly involved with the owner who bears the risk of the owner's failure to pay. The evidence supports a conclusion that this case falls within this rule.

Johnson testified that he understood the March agreement to give T–D a grace period or reasonable time in which to pay a present obligation to O&G. While his testimony did not support the interpretation previously urged by the plaintiff, it is consistent with an interpretation which accepts Taleghani's explanation of the meaning of availability but concludes that the term was not a condition to payment. My finding that the term was not a condition does not rest, however, on Johnson's subjective intention. The testimony from both sides reflects their understanding that the March agreement was executed for the protection of O&G. Since the obligation of T–D to pay O&G would be a present obligation upon delivery of the O&G work product, an agreement to protect O&G would not have had as its object the transformation of a present obligation to a conditional one. Thus, based upon the business context, and the parties' understanding of the purpose of the agreement, I conclude that the manifest intention of the parties is that defendant had an unconditional obligation to pay plaintiff. The phrase availability of funds, which meant availability occasioned by payment from the Iranian government, fixed the time when the unconditional obligation would be paid.

The failure of the time selected to arrive does not excuse the defendant's performance. The intention of the parties was that payment would be made upon the happening of the event or within a reasonable period of time. From the time selected by the "penalty" clause, I conclude that the parties' expected payment would be made about October 1979 or shortly thereafter. Two and one-half years have passed since that time. This clearly exceeds the reasonable time within which the parties contemplated that defendant would fulfill his obligation. Thus, I conclude that the defendant should now pay the plaintiff the amount due.

The defendant has objected to the form of judgment submitted by the plaintiff. Because my decision today renders that form inapposite I will address only one of the defendant's contentions. The defendant contends that even if Taleghani is a partner by estoppel, he should no longer be

considered a partner because control of T–D has been wrested from the putative partners by the new Iranian government. Plaintiff has cited no authority for the proposition that this relieves him of liability for a debt incurred while he was a partner, before the takeover. I conclude that because he was a putative partner at the time he incurred the obligation, he remains liable to the plaintiff.

For all the foregoing reasons, the plaintiff's motion will be granted. An appropriate order follows.

### ORDER

NOW, May 18, 1982, upon consideration of the plaintiff's motion to amend the findings, memoranda submitted by the parties, oral argument held in open court on April 22, 1982, and for the reasons stated in the accompanying memorandum, IT IS ORDERED that

1. the plaintiff's motion is GRANTED,

2. solely to the extent they are inconsistent with the attached memorandum, my findings of fact, discussion, and conclusions of law dated October 29, 1981 are amended,

3. specifically finding of fact 43 is AMENDED to read as follows: "The March 31 Letter superseded the February 21 Agreement which had been suspended by T–D. It constituted a separate agreement between O&G Inc. and T–D in which T–D agreed upon the precise sum that was due and owing to O&G Inc. and promised unconditionally to make payment in full. The time fixed for payment was fifteen days after the availability of funds. In consideration for T–D's unconditional promise, O&G Inc. obligated itself to deliver to T–D the work product for which it had not been paid." (Testimony of Johnson, Justin & Taleghani; Findings of Fact ¶¶ 24–28, 32, 33, and 35; Memorandum dated May 18, 1982.

4. conclusion of law 2 is AMENDED as follows:

"Under the terms of the March 31 Letter to which Taleghani is bound as a partner, he promised unconditionally to pay the principal amount. The time fixed for payment is construed as a reasonable time in light of the non-occurrence of the event selected by the parties. A reasonable time has passed. The defendant is liable to the plaintiff for the principal amount of $157,755.19."

5. JUDGMENT WILL BE ENTERED FOR THE PLAINTIFF AND AGAINST THE DEFENDANT FOR THE PRINCIPAL AMOUNT OF $157,755.19 AND INTEREST THEREON AT 12% SINCE MAY 1, 1979.