# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LOKAN & ASSOCIATES, INC.,  )
d/b/a OPTI STAFFING GROUP, an  )    DIVISION ONE
Alaska corporation,  )
        )    No. 69425-1-I
      Appellant,  )
        )    PUBLISHED OPINION
      v.  )
        )
AMERICAN BEEF PROCESSING, LLC, )
a Delaware Limited Liability Company,  )
        )
      Respondent.  )    FILED: November 4, 2013
        )

DWYER, J. — Lokan & Associates, Inc., d/b/a Opti Staffing Group, appeals from the trial court's order granting summary judgment in favor of American Beef Processing, LLC (ABP). ABP entered into a contract with Opti that conditioned payment to Opti on ABP hiring an employee based on Opti's referral. An addendum to the contract was subsequently executed, which stated that ABP would pay Opti for referrals upon ABP receiving the federal funds it was seeking. ABP has hired two candidates referred by Opti. However, the parties dispute whether the first candidate, Danny Anderson, was hired before or after the addendum was executed. ABP never received the federal funds and has not paid Opti for its referrals. ABP claims that the addendum created a condition precedent, such that ABP's payment obligation was excused when it failed to receive the federal funds. Because there are disputed questions of material fact,

we reverse the trial court's grant of summary judgment and remand for further proceedings.

I

Opti runs a private recruiting business. Among other things, Opti refers suitable job candidates to its clients. In exchange for referring a candidate whom a client hires, Opti charges a fee in an amount equal to an agreed upon percentage of the job candidate's first year gross salary. Opti charges this fee only if its client hires, contracts with, or engages the performance of services by a candidate whom Opti referred to the client. Pursuant to the contract at issue, Opti's "service is rendered when you make an offer of employment and our candidate accepts the offer."

ABP is a start-up company in the business of developing technology for controlling the amount of fat in different beef products. Its president—Anthony Garwood—invented the technology and has spent substantial time developing it into a viable commercial product. In 2009, ABP was operating in Clackamas, Oregon, and its operations were funded entirely by money from investors or lenders—ABP did not produce a product for sale or generate other income. At this time, ABP was seeking funding from the United States Department of Agriculture (USDA) in the amount of approximately $5,000,000. ABP was in a precarious financial state and needed the funding to pay for, among other things, additional personnel.

On October 6, 2009, Garwood—on ABP's behalf—signed Opti's Service Charge Schedule (the contract). The contract obligates ABP to pay Opti 20

percent of the first year salary of any employee referred by Opti and hired by ABP. Payment is made contingent upon ABP hiring a candidate referred by Opti. Payment is due on the day that Opti renders its services, "allowing five (5) days from the date of invoice."

On the same day that the contract was entered, October 6, Opti issued an invoice to ABP for referring Danny Anderson for the position of packaging engineering manager. The invoice was in the amount of $18,000. However, Caryn Binder Lee—then an Opti employee responsible for placing candidates with ABP—emailed Garwood on the same day, explaining that the fee for any placements made with ABP before November 23, 2009 would not be due until that day. Garwood agreed to this arrangement.

ABP failed to pay Opti on November 23. The following day, an addendum was made to the contract.[1] The addendum provides as follows:

> In consideration of American Beef Processing's delayed receipt of federal funds, and services rendered by Opti Staffing Group for the recruitment and identification of Danny Anderson for the Plastic Engineering position with American Beef Processing, *Opti Staffing Group will extend our initially agreed upon payment terms to be payable upon American Beef Processing's receipt of said funds.* Services have been rendered and *payment is due at the time funding is received* regardless of candidates start date and or execution of our originally agreed terms pertaining to Opti Staffing Groups' "One time replacement guarantee."
>
> It is our understanding that Danny Anderson is to begin employment on December 1st, 2009, and for the purposes of the replacement guarantee this will be the effective date. All terms of the originally agreed guarantee terms will apply.

---

[1] Although the addendum was dated November 24, 2009, it appears not to have been executed until sometime after December 7, 2009. This is evidenced by an email from Lee to Garwood on December 7, wherein she requested that Garwood sign the addendum.

(Emphasis added.) Lee emailed Garwood on December 7, 2009, explaining the purpose of the addendum:

> It basically states that we will extend the payment due date and allow Danny to work for you before we have been paid for our services with the understanding that we will be paid as soon as you receive your funding.

Subsequently, Opti referred a candidate to ABP named Kevin Bailey. As a result of this referral, Opti issued another invoice to ABP on January 8, 2010, in the amount of $17,500. However, Opti did not enter into a subsequent addendum for delay in payment with respect to Bailey's referral. Thus, according to the terms of the contract and the invoice, payment was due on January 15, 2010.

ABP never received its anticipated USDA funding and has not paid Opti for referring either Anderson or Bailey. Anderson worked for ABP for only three months before quitting because ABP could not pay him. Bailey was laid off after six weeks, both because he lacked the skills ABP required and because ABP could not afford to pay him.

Opti filed suit against ABP on April 27, 2011. Opti pleaded claims of breach of contract, unjust enrichment, promissory estoppel, and past due account. Thereafter, both parties moved for summary judgment. On September 7, 2012, the trial court denied Opti's motion for summary judgment and granted ABP's motion for summary judgment, dismissing all of Opti's claims. Opti appeals.

II

ABP contends that the addendum to the contract was a valid modification

supported by new consideration. This new consideration, it asserts, was twofold. "First, in exchange for the Addendum, ABP satisfied the initial contingency to Opti earning a fee by hiring Danny Anderson and, later, Kevin Bailey. . . . Second, also in exchange for the Addendum, ABP reiterated its promise to pay the fee *if* the financing contingency was met." Opti disagrees and contends that Anderson had already been hired when the addendum was executed, that the addendum made no reference to Bailey, and that reiterating a promise does not constitute new consideration. Determining whether the addendum was supported by new consideration requires resolution of material facts that are in dispute; accordingly, summary judgment was improperly granted.

We review a summary judgment order de novo. Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party has the burden "'to demonstrate that there is no genuine dispute as to any material fact and all reasonable inferences from the evidence must be resolved against him.'" Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (quoting Morris v. McNicol, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974)).

It is axiomatic that a modification to an existing contract must be supported by consideration independent from that which was given in order to form the original contract. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 834, 100 P.3d 791 (2004). "Consideration is a bargained-for exchange of promises" and "[i]ndependent consideration involves new promises or obligations previously

-5-

not required of the parties." Labriola, 152 Wn.2d at 834, 836. In other words, independent consideration does not exist when "'one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract.'" Labriola, 152 Wn.2d at 834 (quoting Rosellini v. Banchero, 83 Wn.2d 268, 273, 517 P.2d 955 (1974)). In general, "[w]hether a contract is supported by consideration is a question of law and may be properly determined by a court on summary judgment." Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wn.2d 178, 195, 840 P.2d 851 (1992). However, it is for the trier of fact to interpret the meaning of an integrated contract "'if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'" Berg v. Hudesman, 115 Wn.2d 657, 668, 801 P.2d 222 (1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 212(2) (1981)).

Here, whether Anderson was hired before the addendum was executed may only be determined by choosing between reasonable inferences. Opti asserts that ABP had already hired Anderson when the addendum was executed. This is evidenced, according to Opti, by the invoice that Opti issued to ABP on October 6, 2009[2] for placement of Anderson. Garwood, on the other hand, asserts that ABP would not have hired Anderson based on Opti's referral without an agreement conditioning payment to Opti on receipt of USDA funding.

---

[2] The invoice was issued before the date listed on the addendum—November 24, 2009—and before the earliest date that the addendum could have been executed—December 7, 2009—which is evidenced by the email from Lee to Garwood, requesting that Garwood sign the addendum.

This is evidenced, he contends, by his understanding with Lee that ABP would not actually hire anyone unless its payment obligation to Opti was contingent upon receiving federal funding.

Pursuant to the contract, Opti's "service is rendered when you make an offer of employment and our candidate accepts the offer." ABP agreed to these terms without reservation on October 6, 2009. Opti then issued an invoice to ABP on the same day for placing Anderson with ABP. The invoice lists Anderson's start date as December 1, 2009. Again, the invoice was issued on October 6, 2009, whereas the addendum was executed sometime after November 24, 2009.[3] There is no evidence that ABP objected to this invoice—only that ABP wanted to delay any payment obligation to Opti until the date when it received USDA funding. Thus, it is reasonable to infer that ABP had hired Anderson before the addendum and, therefore, that ABP could not have provided new consideration for the addendum by hiring Anderson. Such a reasonable inference is proper to make in favor of the nonmoving party on summary judgment. See Lamon, 91 Wn.2d at 349. It is for the trier of fact to choose between reasonable inferences. Berg, 115 Wn.2d at 668. Accordingly, summary judgment is not appropriate on this basis because the trier of fact must choose between the reasonable inferences presented.

ABP also asserts that it provided new consideration for the addendum by

---

[3] It is not entirely clear when the addendum was actually executed. Although the addendum bears the date of November 24, 2009, Lee sent Garwood an email on December 7, 2009, wherein she said: "I talked with management about the delay in your payment due to the funding not coming through when first expected. They drafted an addendum to the fee agreement that I need for you to please review, sign, and return to me."

hiring Bailey. Although neither party disputes that Bailey was hired after the addendum was executed, the addendum makes no mention of Bailey—only Anderson. Nevertheless, Lee states in her declaration that she understood, and that Garwood and her agreed, that "the agreement reflected in the Addendum also applied to Kevin Bailey." ABP contends that this conclusively establishes that hiring Bailey constituted new consideration. We disagree. It is reasonable to infer from the addendum's silence as to Bailey that the parties only intended it to apply to Anderson. It is for the trier of fact to choose between reasonable inferences. Berg, 115 Wn.2d at 668. Accordingly, summary judgment is not appropriate on the basis that hiring Bailey constituted new consideration necessary to validate the addendum.

Finally, ABP contends that it provided new consideration for the addendum by reiterating its promise to pay so long as its financing contingency was met. Assuming that ABP had already hired Anderson before the addendum was executed—as this court must do in reviewing the trial court's grant of summary judgment—ABP merely reiterated a promise to pay a fee that it already owed. A party does not provide new consideration when it reiterates a promise to do what it is already obligated to do pursuant to the contract. Labriola, 152 Wn.2d at 834. Viewing the facts in the light most favorable to Opti, ABP was already obligated to pay Opti for referring Anderson. Accordingly, ABP's promise to pay what it already owed did not constitute new consideration. Furthermore, whether ABP reiterating its promise to pay constitutes new consideration with respect to Bailey depends on whether the parties intended the addendum to

- 8 -

apply to Bailey in the first place, a question of fact. Therefore, the grant of summary judgment cannot be justified on the basis that ABP's reiteration of its original promise constituted new consideration to validate the addendum.

III

ABP contends that the addendum made receipt of funding a condition precedent to any payment obligations that it had to Opti and that, therefore, summary judgment was proper. This is so, it asserts, because both Garwood and Lee testified that this was what the parties intended. We disagree.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Interpreting a contract provision "is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." Tanner Elec. Coop v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Thus, summary judgment is appropriate only when "'the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.'" Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 85, 60 P.3d 1245 (2003) (quoting Hall v. Custom Craft Fixtures, Inc., 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)).

A condition precedent is a fact or event included in a contract that must take place before a right to immediate performance arises. Ross v. Harding, 64 Wn.2d 231, 236, 391 P.2d 526 (1964). Whether a contract provision is a condition precedent "depends upon the intent of the parties, to be ascertained

from a fair and reasonable construction of the language used in the light of all the surrounding circumstances." Ross, 64 Wn.2d at 236. The intent of the parties to create a condition precedent may often be illuminated by phrases and words such as "on condition," "provided that," "so that," "when," "while," "after," or "as soon as." Ross, 64 Wn.2d at 237. Where doubt exists as to whether parties have created a promise or an express condition, we should interpret the language in question to create a promise. Ross, 64 Wn.2d at 236.

Here, the addendum has more than one reasonable meaning. Contractual language, persuasive precedent, and contemporaneous evidence all support the meaning Opti asks us to adopt. On the other hand, the declarations of Lee and Garwood support the meaning ABP asks us to adopt. Both meanings are reasonable and rest on facts that the parties dispute. Thus, the trial court's grant of ABP's motion for summary judgment was improper.

We turn first to the language of the addendum, which supports Opti's contention that the addendum merely created a promise:

> In consideration of American Beef Processing's delayed receipt of federal funds, and services rendered by Opti Staffing Group for the recruitment and identification of Danny Anderson for the Plastic Engineering position with American Beef Processing, *Opti Staffing Group will extend our initially agreed upon payment terms to be payable upon American Beef Processing's receipt of said funds.* Services have been rendered and *payment is due at the time funding is received* regardless of candidates start date and or execution of our originally agreed terms pertaining to Opti Staffing Groups' "One time replacement guarantee."
>
> It is our understanding that Danny Anderson is to begin employment on December 1st, 2009, and for the purposes of the replacement guarantee this will be the effective date. All terms of the originally agreed guarantee terms will apply.

- 10 -

(Emphasis added.) "Upon" is not one of the illustrative words from <u>Ross</u> and does not unambiguously create a condition precedent. Indeed, the very next sentence suggests that a condition precedent has not been created in that it states that services have been rendered and that payment is due *at the time funding is received*—not that payment is excused if funding is never received.

The timing language in the addendum is analogous to language from the case on which Opti relies: <u>O'Brien & Gere Eng'rs, Inc. v. Taleghani</u>, 540 F. Supp. 1114 (E.D. Pa. 1982), <u>aff'd</u>, 707 F.2d 1394 (3d Cir. 1983). In <u>O'Brien</u>, the court stated that the provision "Taleghani-Daftary agrees to make payments . . . within fifteen days of the availability of funds" did not create a condition to payment; instead, it simply fixed the time when the obligation would be paid. <u>O'Brien</u>, 540 F. Supp. at 1115, 1117. Here, "payment is due at the time funding is received" carries no meaningful distinction from the language used in <u>O'Brien</u>. The <u>O'Brien</u> court, citing to the RESTATEMENT (SECOND) OF CONTRACTS § 227, held that analogous timing language in that case should be interpreted to mean that the party with the payment obligation must pay within a "reasonable time" if it fails to meet its initial payment obligation. <u>O'Brien</u>, 540 F. Supp. at 1117. The court cited two illustrations from the Restatement as instructive of its reasoning:

> "1. A, a general contractor, contracts with B, a subcontractor, for the plumbing work on a construction project. B is to receive $100,000, 'no part of which shall be due until five days after Owner shall have paid Contractor therefor.' B does the plumbing work, but the owner becomes insolvent and fails to pay A. A is under a duty to pay B after a reasonable time.

> 2. A, a mining company, hires B, an engineer, to help
> reopen one of its mines for '$10,000 to be payable as soon as the
> mine is in successful operation.' $10,000 is a reasonable
> compensation for B's service. B performs the required services,
> but the attempt to reopen the mine is unsuccessful and A abandons
> it. A is under a duty to pay B $10,000 after the passage of a
> reasonable time."

O'Brien, 540 F. Supp. at 1117 (quoting RESTATEMENT (SECOND) OF CONTRACTS §

227 cmt. b., illus. 1-2 (1981)). Accordingly, it is reasonable to infer that the

addendum was simply fixing the time at which ABP would be obligated to pay

Opti for the services it had already rendered, and that when ABP failed to meet

its obligation, ABP was under a duty to pay Opti within a reasonable period of

time.

The contemporaneous evidence surrounding the addendum, properly

viewed on motion for summary judgment, supports this inference. At the time the

parties executed the addendum, it is reasonable to infer that Opti had already

rendered services by referring Anderson and so was entitled to receive payment.

Thus, it would be a strange decision for Opti to condition payment to which it was

already entitled on ABP receiving USDA funding. A more reasonable

explanation for the addendum is that Opti was agreeing to delay seeking

payment from a company that did not have money with which to satisfy its

payment obligation. Lee's email to Garwood further corroborates this:

> [The addendum] basically states that we will extend the payment
> due date and allow Danny to work for you before we have been
> paid for our services with the understanding that we will be paid as
> soon as you receive your funding.

Lee's email indicates that Opti was extending a payment due date, not conditioning its entitlement to payment on receipt of funding. As in O'Brien, the language specifies a time when payment is due: not a condition the nonoccurrence of which excuses payment.

Nevertheless, ABP asserts that the surrounding circumstances compel a finding of a condition precedent. ABP's argument lacks merit. ABP asserts that Garwood's and Lee's declarations are admissible to interpret the addendum and that they prove conclusively that the addendum was intended to create a condition precedent. Assuming that the declarations are admissible under Washington's liberal "context rule"[4] for parol evidence, they provide evidence of intent to create a condition precedent. However, the declarations do not prove conclusively that the parties intended to create a condition precedent. This is so because contractual language, persuasive precedent, and contemporaneous evidence all support the meaning Opti asks this court to adopt. Again, summary judgment is appropriate only when "'the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.'" Go2Net, Inc., 115 Wn. App. at 85 (quoting Hall, 87 Wn. App. at 9). Here, the addendum has two reasonable meanings, depending on which party's version of

---

[4] The "context rule" allows extrinsic evidence to be admitted to aid in determining the parties' intent insofar as the evidence interprets the contract language. See e.g., Berg, 115 Wn.2d 657. Lest there be any confusion, we disagree that ABP's extrinsic evidence proves *conclusively* that the parties intended to create a condition precedent. The extrinsic evidence supports one reasonable inference, but it does not resolve what amounts to a factual question. In reversing and remanding, we do not retrench on the liberal "context rule" articulated in Berg. Indeed, we apply the principles articulated in Berg in concluding that summary judgment was inappropriate.

the facts is accepted by the trier of fact. Accordingly, summary judgment was improperly granted.[5]

In order for the trial court to grant ABP's motion for summary judgment, it would have had to first conclude that the addendum was a valid modification to the contract supported by new consideration. As we explained, the trial court erred in resolving factual questions in ABP's favor with respect to the addendum. Furthermore, even assuming that the addendum was valid, both parties have offered competing, reasonable meanings of the addendum. Determining which meaning is correct is a question of fact.[6] Accordingly, we reverse the trial court's grant of summary judgment in favor of ABP and remand for further proceedings.

We concur:

_____

---

[5] Opti also argued that the addendum was unenforceable because it caused Opti to suffer a forfeiture, and that forfeitures are disfavored. In Opti's discursive briefing regarding forfeiture, it first argues that, assuming the addendum did create a condition precedent, the subsequent forfeiture rendered the addendum unenforceable; second, Opti appears to unintentionally reject its original assumption, arguing that Opti's forfeiture proves that the addendum never created a condition precedent and that therefore Opti is entitled to payment. The opaque briefing and lack of evidence in the record indicate that this issue has not been sufficiently developed for our consideration. However, the parties may present additional evidence relating to forfeiture on remand.

[6] For this reason, the trial court properly denied Opti's motion for summary judgment.