

2015 AUG 24 AM 8:55

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JULIE ANN THOMAS, a single woman, )
                                  )
              Appellant, )

                                  )
      v.                            )

J.R. LeVASSEUR and DONNA )
LOUISE LeVASSEUR, husband and )
wife, individually and the marital )
community composed thereof, )
                                  )
          Respondents. )
                                  )

DIVISION ONE

No. 71845-2-I

UNPUBLISHED OPINION

FILED: August 24, 2015

DWYER, J. — Julie Thomas filed suit against her parents, J.R.[1] and Donna Louise LeVasseur, over ownership of a Seattle condominium. Thomas's complaint, which sounded in quiet title and declaratory judgment, alleged that the deed to the condominium was in the LeVasseurs' names in "error." Thomas also filed a lis pendens against the property. Subsequently, in response to a motion for summary judgment filed by the LeVasseurs, Thomas acknowledged that there was no error on the condominium deed and stated that, to the contrary, the LeVasseurs were purposely on the deed. The trial court granted summary judgment in the LeVasseurs' favor and awarded them attorney fees pursuant to both the lis pendens statute (against Thomas) and Civil Rule 11 (against both Thomas and her attorney). Thomas now appeals.

We affirm the grant of summary judgment and the award of attorney fees pursuant to the lis pendens statute. However, we reverse the award of attorney

---

[1] He is also referred to in the record as "Reggie."

fees pursuant to CR 11 as to both Thomas and her attorney.

I

## A. General

Thomas filed suit against her parents, the LeVasseurs, on January 29, 2014, requesting that the LeVasseurs' names be removed from the title to a Seattle condominium (condo) and replaced with her name.

In the trial court, Thomas proposed two theories for why she should be on the title to the condo instead of her parents. In her complaint, Thomas alleged that she had contributed all of the funds for the purchase and maintenance of the property and that it was an "error" that her parents were on the title. However, later in the litigation, Thomas admitted that her parents were purposely on the title to the condo but claimed that they had orally agreed to gift her the condo at her request.

For their part, the LeVasseurs claimed that they agreed to purchase the property because they saw it as an opportunity to help their daughter and granddaughter, who lived in the condo after it was purchased, in the short term, and to make money (through expected capital gains) in the long term.

## B. The Condo

### a. Official Records

The LeVasseurs were listed as the owners on the statutory warranty deed for the condo property. The deed reflects that the property was sold to the LeVasseurs by Harvard & Highland, LLC. In addition to the deed, the LeVasseurs were identified as the buyers in the condo purchase and sale

agreement. Furthermore, the LeVasseurs were listed as the tax payer of record with the King County Treasurer.

The settlement statement for the closing of the condo purchase reflects that the purchase funds were overwhelmingly contributed by J.R. LeVasseur.[2] However, the undisputed facts in the record reveal a more complicated arrangement.

### b. Financial Contributions

The record establishes that the following contributions were made to the purchase and maintenance of the condo.

- $42,500.00 in earnest money was paid by Thomas. However, it is undisputed that a large portion of this sum (at least $30,000.00) was advanced by the LeVasseurs, either directly or through the family business, L & L Machinery.
- $400,000.00 was paid by the LeVasseurs using a combination of funds from (1) a loan secured by a deed of trust on a property of theirs in Jefferson County,[3] and (2) a line of credit extended to L & L Machinery.
- $500,000.00 was paid by Thomas using funds from a loan that she obtained from a personal friend. This loan was subsequently repaid with funds from a loan taken out by the LeVasseurs and secured by a deed of trust on the condo in September 2012. This loan, in turn, was repaid by Thomas' current fiancé in September 2013.
- The LeVasseurs and Thomas each paid some of the condo property taxes.
- Thomas paid the condo's homeowner assessments while she lived there.
- Thomas repaid the LeVasseurs and/or L & L Machinery some of the funds that were contributed to the condo. The exact amount was not established in the trial court record.

---

[2] All but the earnest money is attributed to him. The earnest money is not attributed to anyone.

[3] The LeVasseurs attempted to gift the Jefferson County property to Thomas via a residential trust, which was part of their estate distribution plan. However, Thomas, who was trustee, never transferred the property into her name. Instead, Thomas, as trustee, gifted the Jefferson County property from the trust back to the LeVasseurs.

## C. The Complaint

Thomas's complaint alleged only quiet title and declaratory judgment causes of action against the LeVasseurs. There was no mention of an oral agreement between the parties. Thomas alleged that she had paid for everything related to the condo—its purchase, taxes, and fees—and that the LeVasseurs had contributed nothing. She further alleged that the statutory warranty deed was "incorrectly issued" to the LeVasseurs. Thomas also filed a lis pendens against the property based on her allegation that there was an "error" on the title.

## D. Summary Judgment and Thomas's Second Theory

The LeVasseurs filed a motion for summary judgment on March 12, 2014, seeking dismissal of Thomas's claims as well as an award of attorney fees pursuant to CR 11 "and/or" the lis pendens statute.

Thomas filed her response to the summary judgment motion on April 1, 2014. In it, she proposed her second theory for why she was the rightful owner of the condo. Specifically, Thomas claimed that she was the real purchaser of the condo but that she had arranged for the official documents to bear her parents' names in order to insulate the asset from her former husband.[4] Thomas further claimed that she had an oral agreement with the LeVasseurs that they would transfer the property to her at an undetermined future date. According to Thomas, she filed the underlying suit after the LeVasseurs breached their oral agreement, in September 2013, by refusing to transfer the property to her upon her request.

---

[4] According to Thomas, she and her parents were convinced that any asset of any value held in her name would be subject to attack from her ex-husband. Curiously, she and her ex-husband were divorced in 2010, well before the condo purchase.

In their reply, which was timely filed on April 7, 2014, the LeVasseurs pointed out that Thomas was attempting to change the nature of the underlying action from quiet title to breach of contract. They argued that, while the claims alleged in Thomas's complaint must fail, there was still a possibility of Thomas amending her complaint to reflect her new claim.[5]

### E. Summary Judgment Hearing

The summary judgment hearing was held on April 11, 2014. During oral argument, Thomas's counsel referenced that the complaint might be amended but argued that there was no need for such an amendment.[6] At the conclusion of the hearing, the trial court took the matter under advisement with the expectation that a decision would be rendered within approximately one week.

On April 15, 2014, Thomas filed a motion for an order shortening time and a motion for leave to amend her complaint. On April 17, 2014, the trial court entered three orders: (1) granting Thomas's motion for an order shortening time; (2) denying Thomas's motion for leave to amend; and (3) granting the

---

[5] The reply stated, for example:
Plaintiff has changed her story and argues she is entitled to equitable relief based on the alleged breach of some oral contract. However, Plaintiff has not attempted to amend her Complaint and apparently continues to seek relief in the form of quiet title even though Plaintiff admits that Defendants participated in the purchase of the Subject Property and it was no mistake title was conveyed to Defendants.

[6] Thomas's counsel stated,
If as a result of this, what's come to light as a result of this motion, response, and reply, we end up in a situation where we ought to be pleading breach of contract, specific performance, we're happy to do that. And we certainly have the ability under Rule 16 -- or 15, rather, to amend our complaint to allege specific performance and/or breach of contract.
And if we're in that realm, and we certainly would respectfully request the opportunity to be able to do that, if your Honor is inclined to grant this motion, and we think you can't because of the genuine issues of material fact here, if your Honor is intending to go down that road, then we would respectfully request the opportunity to amend our complaint; I don't think it's necessary.

LeVasseurs' motion for summary judgment in its entirety, reserving only the issue of sanctions and the amount of attorney fees to be awarded.

Thomas filed this appeal on April 23, 2014. Her appeal originally pertained to all of the trial court's April 17 orders. However, at oral argument in this court, the parties agreed that, based on the progress of separate, but related, litigation, this court now need only address the propriety of the summary judgment order and the attorney fee awards.

## II

Thomas first contends that the trial court erred by granting summary judgment in favor of the LeVasseurs. This is so, she asserts, because discovery was required to resolve disputes of material fact. We disagree.

We review a summary judgment order de novo. Lokan & Assocs., Inc. v. Am. Beef Processing, LLC, 177 Wn. App. 490, 495, 311 P.3d 1285 (2013). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Brown v. Brown, 157 Wn. App. 803, 812, 239 P.3d 602 (2010). "Summary judgment is appropriate if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Keithly v. Sanders, 170 Wn. App. 683, 686, 285 P.3d 225 (2012) (citing CR 56(c)).

A quiet title action is equitable and designed to resolve competing claims of ownership. See RCW 7.28.010.[7] "An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination." Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). Because "the object of the statute is to authorize proceedings 'for the purpose of stopping the mouth of a person who has asserted or who is asserting a claim to the plaintiff's property[,] [i]t is not aimed at a particular piece of evidence, but at the pretensions of the individual.'" McGuinness v. Hargiss, 56 Wash. 162, 164, 105 P. 233 (1909) (quoting Castro v. Barry, 79 Cal. 443, 21 P. 946, 947 (1889)), overruled on other grounds by Rorvig v. Douglas, 123 Wn.2d 854, 873 P.2d 492 (1994).

The LeVasseurs' summary judgment motion was directed at Thomas's complaint, which sounded in quiet title and declaratory judgment. Thomas's causes of action were based on her assertion that the condo deed was in the LeVasseurs' names by mistake.

In her complaint, Thomas averred, "Despite the fact that all funds used to purchase the Subject Property were provided by Thomas, the Statutory Warranty Deed was incorrectly issued to LeVasseur [sic]." Complaint, ¶ 3.2. Emphasizing this point, she reiterated, "The fact that title to the Subject Property is currently in

---

[7] RCW 7.28.010 provides, in pertinent part:
Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought . . . against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title.

LeVasseur's name is an *error*." Complaint, ¶ 3.7 (emphasis added). In their summary judgment motion, the LeVasseurs presented significant evidence refuting Thomas's allegation that their names were on the deed by mistake, including documentation of their substantial financial contributions to the purchase of the property. Thereafter, Thomas essentially capitulated. In her response to the motion, she acknowledged that the deed had been correctly issued to her parents; there was no error. Indeed, she even claimed that she had orchestrated the situation so that the deed would be in her parents' names instead of hers.

By Thomas's own admission, then, the ultimate material fact—whether the deed was incorrectly issued to the LeVasseurs—was not in dispute. Moreover, Thomas could not rely on discovery to change that which she knew to be true—there was no error on the deed.

Therefore, summary judgment in the LeVasseurs' favor was properly granted.

III

Thomas next contends that the trial court erred by awarding the LeVasseurs reasonable attorney fees pursuant to the lis pendens statute, RCW 4.28.328(3).[8] This is so, she asserts, because she established a substantial justification for filing the lis pendens. We disagree.

---

[8] RCW 4.28.328(3) provides, in pertinent part:
Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action

Under the lis pendens statute, where a lis pendens is filed, the claimant may be liable for damages and attorney fees to a party who successfully defends the related action unless the claimant establishes substantial justification for filing the lis pendens. RCW 4.28.328(3). Whether to award reasonable attorney fees and costs incurred in successfully defending against the action is within the discretion of the trial court. RCW 4.28.328(3).

A lis pendens is filed in a specific action. Filing a lis pendens is not itself an assertion of a claim to property. Rather, it is a mechanism for giving notice that a lawsuit that concerns real property has been filed. Thus, the justification for filing a lis pendens must be found not in the lis pendens itself but in the underlying cause of action. Thomas's cause of action against the LeVasseurs is grounded in her complaint.

In this case, it is clear, based on the averments in her complaint, that Thomas did not have a substantial justification for filing the lis pendens. Thomas's complaint was based on an alleged "error" in the condominium deed, but even she now admits that there is not—and never was—an error in the deed. To the contrary, it is now Thomas's assertion that her parents were listed on the deed by her own design.

Thomas nevertheless contends that she "amply demonstrate[d]" a substantial justification for filing the lis pendens herein through the declarations she submitted in opposition to the LeVasseurs' summary judgment motion. She further asserts that, in order to restrict the substantial justification inquiry to the averments in a complaint, the underlying litigation must have progressed further

than it did in this case.[9] However, Thomas's implied fairness argument ignores the fact that a party chooses when or if to file a lis pendens and, therefore, when or if to subject him- or herself to liability under the lis pendens statute.

A lis pendens may be filed "[a]t any time after an action affecting title to real property has been commenced." RCW 4.28.320. A party is not liable under the lis pendens statute unless a lis pendens is filed. However, once a lis pendens is filed, the party filing it must have a substantial justification for doing so. The trade-off that a party faces between the security afforded by a lis pendens and the risk of liability under the lis pendens statute necessarily forces the party considering filing a lis pendens to weigh the cost of filing an unjustified lis pendens. As a result of this legislative scheme, a prudent litigant will delay filing a lis pendens until he or she has sufficient information to fairly evaluate the strength of the asserted claim.

Thomas chose to file the lis pendens herein along with her complaint, rather than waiting until she had the benefit of discovery to evaluate her claims. As discussed, there was no substantial justification for this filing. Therefore, the trial court did not abuse its legislatively-given discretion by awarding the LeVasseurs reasonable attorney fees for defending against this action.

We also award the LeVasseurs reasonable attorney fees for the costs incurred in defending against Thomas's action on appeal. See RCW

---

[9] At oral argument, Thomas hypothesized that an appropriate time to so restrict the substantial justification inquiry would be after discovery has been completed.

- 10 -

4.28.328(3); RAP 18.1; accord Richau v. Rayner, 98 Wn. App. 190, 199, 988 P.2d 1052 (1999).[10]

IV

Thomas also contends that the trial court erred by awarding the LeVasseurs attorney fees against both her and her counsel pursuant to CR 11 based on factually incorrect statements in her complaint. This is so, she asserts, because the alleged factual errors preceded discovery and were the product of reasonable inquiry by her counsel. We agree that the award as to Thomas's counsel was inappropriate.

The signature of a party or attorney on a pleading constitutes a certificate by that party or attorney that the pleading is well grounded in fact, warranted by existing law or a good faith argument for a change in existing law, is not interposed for an improper purpose, and contains only factual contentions or denials warranted by the evidence. CR 11(a). Where a pleading is signed in violation of the rule, "the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction," including reasonable attorney fees and expenses. CR 11(a). We review an award of sanctions under CR 11 for an abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994).

In determining whether the trial court abused its discretion, we are mindful that CR 11 is intended to deter baseless filings and to curb abuses of the judicial system. Biggs, 124 Wn.2d at 197. The rule is not "meant to act as a fee shifting

---

[10] In a related appeal, the question of the amount properly awarded has been remanded to the trial court. On remand, the trial court is also tasked with making an appropriate award of appellate fees.

mechanism." Biggs, 124 Wn.2d at 197. Furthermore, because "discovery will provide parties with the opportunity to learn more detailed information about the nature of a complaint[, a] court should . . . be reluctant to impose sanctions for factual errors or deficiencies in a complaint before there has been an opportunity for discovery." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 222, 829 P.2d 1099 (1992).

"Courts should employ an objective standard in evaluating an attorney's conduct, and the appropriate level of pre-filing investigation is to be tested by 'inquiring what was reasonable to believe at the time the pleading, motion or legal memorandum was submitted.'" Biggs, 124 Wn.2d at 197 (quoting Bryant, 119 Wn.2d at 220). Moreover, an attorney is not obliged to disbelieve his client's factual allegations and "it is improper to impose sanctions on an attorney based solely on the ultimate determination of his client's credibility." Saldivar v. Momah, 145 Wn. App. 365, 403, 186 P.3d 1117 (2008).

In this case, the trial court awarded the LeVasseurs reasonable attorney fees pursuant to CR 11 against both Thomas and her counsel. The trial court made the following findings in support of this order:

- "[T]he Court finds that numerous allegations contained in Plaintiff's Complaint are not well grounded in fact—such unfounded allegations include the claims that Plaintiff made all payments associated with the purchase and ownership of the [condo]."
- "The Court further finds that the untruthfulness of Plaintiff's claims should have been discovered by Plaintiff's counsel before Plaintiff's counsel signed the Complaint and filed it."

The challenged allegations have since been shown or admitted to be incorrect.

As to Thomas's counsel, starting from the correct premises—that is, that CR 11 sanctions for factual errors should rarely be imposed before discovery and that an attorney is not obliged, at the outset of a case, to disbelieve his client— the award of sanctions against Thomas's counsel was improper. The untruthfulness seized on by the trial court was Thomas's averment in her complaint that she made all payments associated with the purchase and ownership of the condominium. And, indeed, it is now clear from the record that Thomas did not, in fact, make *all* of the payments; she only made some. But we must avoid imposing "the wisdom of hindsight" on Thomas's counsel. Bryant, 119 Wn.2d at 220. Instead, we focus our inquiry on the circumstances at the time.

Herein, Thomas's counsel had a client who had lived at the subject property with her daughter since it was purchased. Moreover, that client had evidence that she contributed more than $540,000.00 to the purchase of the condo property and that she had continued to contribute financially by paying fees and taxes associated with it. Objectively, Thomas's attorney had a reasonable basis for making the averments at issue at the pleading stage of the litigation, before discovery had commenced.[11] The trial court abused its discretion by determining otherwise. The sanctions award against Thomas's counsel must be vacated.

---

[11] It also appears from the record that counsel for the LeVasseurs did not provide Thomas notice of the alleged CR 11 violation before requesting sanctions from the trial court. This is contrary to established professional norms. Vail, 124 Wn.2d at 198-99 n.2. Moreover, the trial court should have taken the lack of notice into consideration before deciding the CR 11 request.

As to Thomas herself, the trial court entered no factual finding describing the facts giving rise to her individual culpability under CR 11.[12] Indeed, the trial court's order is entirely silent on this matter. Thus, the trial court's imposition of CR 11 sanctions against Thomas, individually, must also be vacated.

Affirmed in part and reversed in part.

We concur:

___

---

[12] We also note that the attorney fee award was more properly made pursuant to the lis pendens statute, which applies to Thomas's primary misconduct herein—filing a lis pendens in an unjustified action. See Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339-40, 858 P.2d 1054 (1993) ("CR 11 sanctions are not appropriate where, as here, other court rules more properly apply."); accord Momah, 145 Wn. App. at 402 ("When a specific sanction rule applies, the inherent power of the trial court to sanction does not apply.").