[No. 35901-4-II. Division Two. December 18, 2007.]

JOEL HAVLINA, *Appellant*, v. THE DEPARTMENT OF TRANSPORTATION ET AL., *Respondents*.

512

*George Fearing*, for appellant.

*Robert M. McKenna*, *Attorney General*, and *Patricia A. Thompson*, *Assistant*, for respondents.

¶1 QUINN-BRINTNALL, J. — Joel Havlina appeals the Personnel Appeals Board's (PAB) decision that the Department of Transportation (DOT) made reasonable accommodations for his disability when it searched for substitute positions within the DOT, Department of Corrections (DOC), and Department of Social and Health Services (DSHS). Because the PAB did not err in ruling that the DOT properly released Havlina from employment after an injury rendered him unable to perform the duties of his "Maintenance Technician 3" job for more than a year and there were no other comparable DOT positions available within Havlina's self-imposed 50-mile commute restrictions, we affirm.

## FACTS

¶2 Havlina does not challenge any of the PAB's findings of fact and, thus, they are verities on appeal. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995). Following are the unchallenged facts as determined by the PAB:

2.1 . . . Havlina was a permanent employee for [the DOT]. [Havlina] and [the DOT] are subject to Chapters 41.06 and

41.64 RCW and the rules promulgated thereunder, Titles 356 and 358 WAC. [Havlina] filed a timely appeal with the [PAB] on May 13, 2005.

2.2 [Havlina] became employed with the [DOT] in 1993. During his tenure with [the] DOT, he held classification as a Maintenance Technician 1, 2, and 3. As a Maintenance Technician 3, [Havlina] worked at the DOT maintenance offices in Pasco and Connell. [Havlina] performed very physical work, including road maintenance and cleaning, lifting heavy objects, digging ditches, and traffic control. The essential functions of the Maintenance Technician 3 position also required [Havlina] to engage in repetitive movements, including bending, kneeling, crawling, and twisting. Maintenance Technicians also operate a variety of heavy equipment, like snow plows, front-end loaders, dump trucks, and trucks with clutches.

2.3 On March 4, 2004, [Havlina] injured his knee during a work-related training, and he was out from work. [Havlina] subsequently underwent surgery to his knee and was released to work effective May 17, 2004. [Havlina] was directed by his physician not to climb ladders, to avoid squatting, bending, crawling, driving a clutch vehicle, and to avoid lifting anything heavier than 15 pounds. Consequently, the [DOT] accommodated [Havlina's] injury with light-duty desk work performing paper and computer work.

2.4 In early November 2004, [Havlina] met with the DOT staff to discuss his condition, ability to return to work, and reasonable accommodation. The winter season is extremely busy for DOT Maintenance Technicians and requires them to use a variety of trucks and equipment to plow snow. In addition, employees work alone without the aid of co-workers to assist with physically demanding tasks. As the 2004-2005 winter season approached, [Havlina] was still unable to drive clutch vehicles, and he was unable to lift over 50 pounds, crawl, squat, or twist his knee. Therefore, [Havlina] was not able to fully perform the duties of his Maintenance Technician 3 position, and the [DOT] was unable to provide [Havlina] with other light duty work during the winter season. Therefore, [Havlina] was off work during the winter season.

2.5 On March 2, 2005, Wayne Frudd, Regional Safety and Health Manager, met with [Havlina] and his union representative to discuss [Havlina's] condition and accommodation

needs. Human Resource Consultant Julie Lougheed partici-
pated by telephone. [Havlina] indicated his condition had
actually deteriorated from November 2004, and his physical
limitations continued to prevent him from performing the full
breadth of his maintenance work. [Havlina] was also on a
medication at that time that affected his Commercial Driver's
License certification, which prevented him from driving certain
types of vehicles. [Havlina] agreed that based on his medical
restrictions, he was unable to perform the Maintenance Tech-
nician duties but could perform desk work. During the meeting,
they discussed [Havlina's] skills and other positions he would
consider. [Havlina] indicated that because he lived in Connell,
he was unwilling to consider any positions that were more than
40 to 50 miles from his residence. [Havlina] provided the [DOT]
with a state application for employment and a resume to
facilitate the search for available positions for which he was
qualified.

2.6 On March 10, 2005, the [DOT] received a physician's report
confirming that [Havlina] was under the same prior restric-
tions. Additionally, the report indicated [Havlina] was unable
to sit or walk for a period of more than a half hour at a time but
that he could use a clutch at his own discretion. [Havlina's]
physician did not provide a prognosis for how long [Havlina]
would remain unable to perform the essential duties of his
position.

2.7 As a result, Casey McGill, Assistant Regional Administra-
tor for Maintenance and Operations, determined that separa-
tion due to disability was necessary based on [Havlina's]
inability to perform the essential functions of his position, with
[or] without accommodation. As a part of the [DOT's] accom-
modation process, Ms. Lougheed performed a search for va-
cant, funded positions for which [Havlina] was qualified in the
geographical area indicated by [Havlina], including positions
that were clerical in nature. However, there were none avail-
able. Based on Havlina's geographical limitations, the [DOT]
was restricted in its ability to conduct a wider job search. In
addition, although [Havlina] met the minimum qualifications
of several jobs, they were higher classifications and were
considered promotional opportunities which, based on the
[DOT's] policy, were not options that could be provided to
[Havlina]. However, [Havlina] was encouraged to apply for any
promotional opportunities for which he was qualified.

2.8 On April 18, 2005, Mr. McGill formally notified [Havlina] of his separation due to disability and the [DOT's] inability to accommodate his physical disability. The effective date of the separation was at the end of his work shift on June 17, 2005. After the separation letter was issued, Ms. Lougheed continued to search for vacant positions for a period of two months, however, none became available.

Clerk's Papers at 7-9.

¶3 Havlina lives in the city of Connell, in eastern Washington. Because the majority of the DOT positions are located in western Washington, Havlina's 50-mile geographical restriction greatly reduced the number of positions available for him in the DOT. Connell is located between Spokane and Pasco, approximately 40 miles north of Pasco and approximately 90 miles south of Spokane. The outskirts of Pasco, Richland, and Kennewick are approximately 30 miles from Connell. Larger cities in eastern Washington, including Wenatchee, Ephrata, and Yakima are all more than 50 miles from Connell.

¶4 This case requires that we answer the following question: Did the DOT reasonably accommodate Havlina's disability by searching for available substitute positions within the DOT but not in all other state agencies? Answering yes, we affirm.[1]

---

[1] The DOT argues that Havlina's appeal should be denied because Havlina failed to assign error to any of the PAB's findings of fact or conclusions of law and failed to include a separate "concise statement of each error" he alleges the PAB made, contrary to RAP 10.3(h). Generally, we will review claimed error only if it is included in an assignment of error. *See* RAP 10.3(a)(4). But we construe the Rules of Appellate Procedure liberally to promote justice and facilitate the decision of cases on the merits. RAP 1.2(a); *see also State v. Olson*, 126 Wn.2d 315, 318-19, 893 P.2d 629 (1995). Because this is "a case where the nature of the appeal is clear," "the relevant issues are argued in the body of the brief," "citations are supplied so that the court is not greatly inconvenienced," and "the respondent is not prejudiced," we consider the merits of his appeal. *Olson*, 126 Wn.2d at 323; *see also* General Order 1998-2 of Division II, *In re Assignments of Error* (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

## ANALYSIS

REASONABLE ACCOMMODATION

 ¶5 We review PAB decisions de novo but accord substantial weight to an agency's interpretation of the statutes it administers. Former RCW 41.64.130 (1981);[2] former RCW 41.64.140 (1988);[3] *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 144-45, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999). An individual may appeal an adverse ruling by the PAB on the basis that the PAB order was (1) founded on or contained error of law, (2) contrary to a preponderance of the evidence, (3) materially affected by unlawful procedure, (4) based on a violation of any constitutional provision, or (5) arbitrary and capricious. Former RCW 41.64.130(1). A PAB decision is founded upon an error of law when it is either erroneously construed or erroneously applied. *See* former RCW 41.64.130(1)(a).

 ¶6 Havlina agrees that he was unable to perform his duties as a Maintenance Technician 3, but he argues that the DOT failed to make reasonable accommodations for his disability because it failed to search all state agencies and departments for a vacant substitute position.[4] The DOT responds that it made a good faith effort to accommodate Havlina but because of his medical restrictions and self-imposed geographical restrictions, it was unable to locate any vacant positions suitable for him. The DOT further contends that, not only did it search for vacant positions for which Havlina was qualified with the DOT, the DOC, and DSHS, it also searched for and found higher

---

[2] RCW 41.64.130 was repealed effective July 1, 2006, but remains the applicable law for this appeal.

[3] RCW 41.64.140 was repealed effective July 1, 2006, but remains the applicable law for this appeal.

[4] Such agencies include the State Patrol, Department of Agriculture, Attorney General's Office, Department of Ecology, Department of Fish and Wildlife, Department of Health, Department of Labor and Industries, Department of Licensing, Liquor Control Board, Department of Natural Resources, Department of Retirement Systems, and Department of Revenue.

classified positions that would constitute promotions for Havlina. Havlina could have competed for these higher classified positions, but he failed to pursue those avenues.

¶7 Both Havlina and the DOT agree that there is no law requiring state agencies to look for open positions in each agency within the state to reasonably accommodate a disabled worker. But Havlina baldly asserts that, because the State is a single legal entity, it is one employer and, thus, it has a duty to search for vacant positions in all state agencies and departments in order to fulfill its obligation to reasonably accommodate a disabled employee. Havlina does not cite any authority to support his assertion. We hold that state agencies have no such duty.

¶8 The Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, and the Washington Law Against Discrimination (WLAD), former RCW 49.60.180 (1997), require employers to make reasonable accommodations for disabled employees. *Cripe v. City of San Jose*, 261 F.3d 877, 881 (9th Cir. 2001); *Dean v. Mun. of Metro. Seattle*, 104 Wn.2d 627, 632, 708 P.2d 393 (1985). The WLAD's prohibition against disability discrimination does not apply if the disability prevents the employee from properly performing his job. *See* WAC 162-22-045; *Dedman v. Pers. Appeals Bd.*, 98 Wn. App. 471, 486, 989 P.2d 1214 (1999). If an employee is not able to perform the essential functions of his job, the agency's responsibility to accommodate the employee is limited to making a "good faith" effort to locate a job opening for which the employee is qualified. *See Dedman*, 98 Wn. App. at 486; *see also Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 121, 720 P.2d 793 (1986); *Machart v. Liquor Control Bd.*, No. DSEP-00-0005, at 8 (Wash. Pers. Appeals Bd. 2001). "An employer is not required 'to offer the employee the precise accommodation he or she requests,' or to create a job where none exists." *Dedman*, 98 Wn. App. at 485 (citation omitted) (internal quotation marks omitted) (quoting *Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995)).

¶9 Here, the DOT attempted to locate a substitute position for Havlina but was unable to do so given Havlina's disability and the 50-mile geographical limitation Havlina imposed on the search. In addition, the DOT informed Havlina of positions that were promotions for which he could compete, but he failed to apply. The DOT also informed Havlina of assistance sites for finding jobs, but he did not use those services. Although it was not required to do so, the DOT checked with two other state agencies (DOC and DSHS) to see if they had any suitable openings, but found none. Havlina admitted that he looked at web sites for other state agencies and the federal government but did not apply for any of the available positions. While the DOT had a duty to inform Havlina of jobs within the agency for which he was qualified, Havlina had a duty to cooperate with the DOT in the search for other suitable work by applying for jobs that might fit his abilities. *See Dean*, 104 Wn.2d at 637-38. We agree with PAB that when Havlina became disabled and unable to perform necessary job functions, the DOT made a good faith effort to accommodate Havlina's job needs, and we affirm.

BRIDGEWATER and HUNT, JJ., concur.