FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE PORT OF TACOMA, a Washington municipal corporation, | No. 43940-9-II |
| Respondent, | |
| v. | |
| EDWARD D. CAMPBELL, as trustee for the CPB&L TRUST, and | UNPUBLISHED OPINION |
| Appellant, | |
| CHICAGO TITLE INSURANCE COMPANY, | |
| Defendant. | |

HUNT, P.J. — C.P.B. & L. Trust appeals the superior court's summary judgment ordering the release of escrow funds to the Port of Tacoma under an agreement allowing the Port to recover part of a property's purchase price to offset environmental cleanup costs in exchange for the Trust's release from Model Toxics Control Act (MTCA)[1] liability. The Trust argues that (1) it could not be held accountable for environmental cleanup costs until an equitable apportionment of those costs under the MTCA occurred; (2) the superior court violated the

---

[1] ch. 70.105D RCW.

Trust's equal protection[2] rights by awarding the escrow funds to the Port; (3) the superior court should not have considered a perjurious declaration about the cost to remediate hazardous substances on the property; (4) the spoliation doctrine should have precluded the superior court's considering the Port's requested remediation cost because the Port destroyed other remediation cost evidence when it removed contaminated soil from the property; (5) the Port improperly asserted control over the escrow funds; (6) the escrow agreement was unenforceable because it was not supported by consideration; (7) the superior court did not comply with CR 56(h) because its summary judgment order failed to include each document submitted to the superior court; (8) the Port's claim to the escrow funds was untimely because the Port did not make its claim within the five years specified in the escrow agreement; (9) the escrow agreement was a guarantee and, therefore, the Port was required to comply strictly with the agreement's 21-day notice and comment period in order to claim the funds; (10) the escrow agreement's notice and comment period was a condition precedent to the Port's ability to recover the funds; (11) the escrow agreement's "time is of the essence" clause barred the Port's recovery of the escrow funds; (12) equitable estoppel barred the Port's hazardous substance remediation claim because it failed to inform the Trust about hazardous substances discovered on the property in 2009; and (13) the superior court abused its discretion in awarding attorney fees to the Port. The Trust also requests attorney fees on appeal under the escrow agreement.

We hold that (1) the Trust failed to preserve its MTCA-related claims because neither party asserted MTCA claims below, and the superior court did not address them; (2) the Trust

---

[2] WASH. CONST. art I, § 12.

2

failed to support its equal protection claim adequately; (3) the trial court properly considered the challenged declaration because its statements were not perjurious; (4) because the Port's environmental consultants retained samples of the contaminated soil, there was no spoliation; (5) because control over the escrow funds is not disputed, the Trust's argument on this point lacks merit; (6) the escrow agreement was supported by consideration in that the Trust allowed a portion of the Port's purchase price to be placed in escrow in exchange for the Trust's release from MTCA liability for removal of the property's hazardous substances; (7) even assuming, without deciding, that the superior court's summary judgment order erroneously omitted certain documents, any error was harmless; (8) the Port's claim to the escrow funds was timely; (9) the Trust does not show why the escrow agreement should be interpreted as a guarantee; (10) the escrow agreement's notice and comment period was not a condition precedent to the Port's ability to recover the escrow funds; (11) the Trust does not show why the escrow agreement's "time is of the essence" clause bars the Port from recovering the escrow funds; (12) the Trust's equitable estoppel claim fails because there was no evidence that the Trust suffered any injury from its inability to comment on the Port's remediation plan within the specified period; and (13) the Trust fails to support its challenge to the superior court's attorney fee award to the Port. Therefore, we affirm the superior court's grant of summary judgment and award of attorney fees to the Port. And we award attorney fees on appeal to the Port as the prevailing party under the escrow agreement.

FACTS

I. PURCHASE OF CONTAMINATED PROPERTY; ESCROW AGREEMENT

On May 26, 2006, the Port purchased Tacoma property from Marine View, Inc., to create a habitat mitigation area. The Trust was a secured lienholder on the property. Because the property had been used as a depository for construction debris and other materials, the Port had concerns about the potential for hazardous waste and the cost to remediate the contamination; so it bargained for an agreement with the Trust and with Marine View to place $500,000 of the purchase price in escrow. This agreement allowed the Port to make later claims on the escrow funds to cover environmental cleanup costs within five years of the closing date.

The agreement further provided that if the Port discovered hazardous substances on the property, (1) before beginning remediation work, it must provide notice to the Trust of the property's condition and a cost estimate for remediating the condition; (2) the Trust would have 21 days to comment on the proposal before the Port began its remediation work; and (3) any funds remaining in the escrow account were to be released to the Trust on the fifth anniversary of the closing date. In exchange for the Trust's agreement to hold $500,000 of the purchase price in escrow, the Port agreed to release the Trust from any future environmental claims under the MTCA.

In 2009, the Port discovered metals and petroleum contamination on the property. During construction on the habitat mitigation project in 2010, the Port discovered that the contamination was more extensive than estimated in 2009 and required removal. Because the Port had already begun habitat mitigation construction, it immediately removed the contaminated soil for efficiency reasons because the Port's contractor and necessary excavation equipment

4

were already on site, allowing the Port to take advantage of pre-arranged, competitive disposal rates for the contaminated soil. The Port spent over $5 million to remediate this contamination.

On May 23, 2011, the Port sent a letter to the Trust stating that it had discovered metals contamination on the property and demanding reimbursement of the $500,000 held in escrow. The Trust opposed release of the funds to the Port because the Trust had received the letter on May 26, 2011, which notice the Port claimed was one day late—one day after expiration of the five-year period for making claims against the escrow account, based on the May 26, 2006 closing date for the property's purchase. The Trust also asserted that the Port had materially breached the terms of the escrow agreement by failing to comply with the 21-day notice and comment period before engaging in the contamination remediation.

## II. LAWSUIT

In November 2011, the Port filed a complaint against the Trust[3] for breach of contract, seeking release of $490,000[4] from the escrow account and attorney fees for having to sue to enforce the escrow agreement.

The Trust moved for summary judgment, arguing that (1) the escrow agreement was a guarantee requiring strict compliance with its terms, and (2) the Port's failure to comply with the 21-day notice and comment period requirement nullified the Port's claim to the escrow funds. The Port also moved for partial summary judgment, asking the court to rule that the Port's failure

---

[3] The Port also named the parties' escrow agent, Chicago Title Insurance Company, in the complaint. The Port later dismissed its complaint against Chicago Title after Chicago Title agreed to deposit the escrow funds in the trial court clerk's registry.

[4] In October 2011, the Port had authorized Chicago Title to release $10,000 from the escrow account to the Trust for reasons unrelated to this case. Thus, the Port sued for only the remaining $490,000 of the agreement's original $500,000.

5

to comply with the comment period was not a bar to its recovering the escrow funds because (1) this failure was not a material breach of the escrow agreement, and (2) the comment period was not a condition precedent to performance based on the plain terms of the contract. The superior court denied both parties' summary judgment motions, reasoning that there were material issues of fact regarding interpretation of the escrow agreement.

In April 2012, the Trust filed a second summary judgment motion. It argued that the escrow agreement was defunct and had expired because the Port had failed to make a claim to the funds before the fifth anniversary of the property's purchase closing date. The Trust argued that the agreement's "time is of the essence" clause strengthened this requirement to comply strictly with the five-year limitation. Clerk's Papers (CP) at 436. The Port also filed a second summary judgment motion, supported with a declaration from Leslee Conner, an engineer for the Port's remediation group.

Conner declared that there was contamination from metals and petroleum on the property, which conclusion she supported with attached reports establishing the extent of the contamination and the necessity for removing the contaminated soils to comply with state regulations. Conner further stated that (1) the methods the Port used to remediate the contamination were the most cost effective; and (2) even if the Port had provided the Trust with notice of the remediation, it was "inconceivable" that any comment the Trust could have made would have reduced the costs to less than the $490,000 available in the escrow account. CP at 867.

The superior court denied the Trust's summary judgment motion, granted summary judgment to the Port, awarded the Port attorney fees and costs under the escrow agreement, and

awarded the Port a $490,000 judgment to be satisfied from the escrow deposit in the clerk's registry. The Trust unsuccessfully moved for reconsideration. The Trust appeals.

## ANALYSIS

The Trust challenges the superior court's summary judgment order releasing escrow funds to the Port on several grounds. To the extent that the Trust has provided sufficient argument supporting these challenges, we address each in turn.

### I. STANDARD OF REVIEW

We review de novo a superior court's decision on summary judgment. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is appropriate where, viewed in the light most favorable to the nonmoving party, the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). The parties here do not dispute the material facts. Accordingly, the remaining issues are questions of law, which we review de novo. *Boag v. Farmers Ins. Co.*, 128 Wn. App. 333, 339, 115 P.3d 363 (2005).

### II. FAILURE TO PRESERVE MTCA CLAIMS

The Trust argues that the superior court erred in ordering it to release the escrow funds to the Port because the Port could not be held liable for remediation costs until an equitable apportionment of those costs was conducted under the MTCA, chapter 70.105D RCW.[5] These MTCA-based arguments are not relevant to our analysis of the Trust's liability because neither

---

[5] More specifically, the Trust argues that (1) it was not liable under the MTCA because it did not "release" any hazardous substances on the property; (2) it was not a party that could be held liable under the MTCA under RCW 70.105D.040; and (3) there was no proof that the hazardous substances on the property posed a threat to human health or the environment.

7

party asserted MTCA claims below, and the superior court did not address them.[6] We may refuse to review any claim of error not raised in the trial court. RAP 2.5(a); *Hall v. Feigenbaum*, 178 Wn. App. 811, 817-18, 319 P.3d 61, *review denied*, __ Wn.2d __ (2014). Accordingly, we do not further address the Trust's MTCA-based arguments.

### III. INADEQUATE EQUAL PROTECTION ARGUMENT

The Trust also argues that the superior court violated its equal protection rights because it failed to give the Trust the benefit of its bargain and failed to enforce applicable contract and guarantee rules by (1) ignoring the Trust's contract defenses against the Port's claims, (2) ignoring the Port's failure to serve or to perfect its claim against the Trust's guaranteed escrow, and (3) jumping directly to the question of whether the Port had a claim for damages. The Trust argues that these alleged deficiencies are "a clear indication that in Pierce County, the Port of Tacoma is being treated as a superior to other litigants in the county." Br. of Appellant at 34. These arguments also fail.[7]

In support of these arguments, the Trust cites only the general equal protection provisions of the Washington and United States constitutions, without explaining how they were violated in the context of this appeal. Because the Trust's argument on this point is inadequate, we decline to address it further. RAP 10.3(a)(6); *see also In re Marriage of Katare*, 175 Wn.2d 23, 40, 283

---

[6] Rather, the dispute at issue involves the Trust's contractual obligations under the escrow agreement, in which the Port agreed to release the Trust from MTCA liability in exchange for the Port's right to seek reimbursement for future environmental cleanup costs from the $500,000 portion of the property's purchase price deposited in escrow.

[7] To the extent that the Trust argues the superior court violated its equal protection rights by reaching a decision unfavorable to the Trust, such argument lacks support and merit.

P.3d 546 (2012) ("'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'") (internal quotation marks omitted) (quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988)), *cert. denied*, 133 S. Ct. 889 (2013).

## IV. NO PERJURY

The Trust next argues that the superior court should not have considered Conner's declaration to establish the necessity and cost of remediation because, it alleges, she "committed perjury in her declaration." Br. of Appellant at 37. The Trust cites only ER 607 and *Washington Practice's*[8] discussion of this rule to support its argument. The Trust cites no authority to support its contention that the superior court should not have considered the evidence; nor does the Trust make clear what relief it requests. Because the Trust inadequately briefed this argument, contrary to RAP 10.3(a)(6), we do not further consider it.[9]

---

[8] 5A WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 607.17-20, at 407-12 (5th Ed. 2007).

[9] But even were we to consider this argument, the Trust would not prevail. First, the Trust mischaracterizes Conner's declaration statements: Conner did not state that the Trust would be liable for cleanup costs under the MTCA, as the Trust alleges. Rather, she (1) described the exchange of promises the parties made when they entered into the escrow agreement; and (2) stated that, in her opinion, had the Port known the extent of the contamination on the property, it would not have limited its recovery to only $500,000. These statements do not claim that the Trust was actually liable under the MTCA; thus, they were not false. Second, these statements were not statements of fact but, rather, legal conclusions about the Trust's potential liability under the MTCA. But there are no MTCA claims at issue in this appeal; thus, the Trust fails to show how Conner's MTCA statements were material so as to amount to "perjury" under RCW 9A.72.020(1), which requires "a *materially* false statement." (Emphasis added.).

## V. No Spoliation

The Trust further argues that the evidence of the Port's remediation costs was inadmissible under the spoliation doctrine because critical evidence was "destroyed" when the Port removed the hazardous substances from the property. Br. of Appellant at 32. We disagree.

As a preliminary matter, we note that the Trust fails to provide any authority or citations to the record supporting its assertion; therefore, the Trust's briefing on the matter does not comply with RAP 10.3(a)(6). Nevertheless, we note that even if the Trust had properly supported its argument with authority and citations to the record, the record does not support its factual assertions. The record shows that no evidence of remediation costs or soil conditions was destroyed. On the contrary, the Port offered to provide the Trust with (1) samples of the contaminated soils that its environmental consultants had retained and (2) accompanying laboratory reports on the contamination; but the Trust did not respond to this offer. Therefore, here, the allegedly destroyed evidence did not warrant application of the spoliation doctrine.[10]

## VI. Control over Escrow Funds Not Disputed

The Trust next argues that the Port incorrectly asserted to the superior court that it (the Port) had sole control over the escrow funds and "could do what it wanted with [those funds] for any remediation." Br. of Appellant at 23. The Trust is correct to the extent that (1) in general, "[o]nce deposited in escrow, an instrument passes beyond the control of the depositor, and he

---

[10] We further note, however, that even if evidence had been destroyed such that the spoliation doctrine would apply, the trial court could have allowed an inference that the allegedly destroyed evidence would have been unfavorable to the party who destroyed it, rather than excluding the evidence, as the Trust argues here. *See Henderson v. Tyrrell*, 80 Wn. App. 592, 605, 910 P.2d 522 (1996).

may not recall it"; and (2) "[u]pon the performance of the condition named, the depositary must deliver it to the grantee." *Lechner v. Halling*, 35 Wn.2d 903, 912, 216 P.2d 179 (1950).

But the record here does not show that the Port's assertions about its control over the escrow funds misled the superior court: The superior court did not conclude that the Port retained control over the escrow funds or that Chicago Title was not required to turn the funds over to the Trust on the fifth anniversary of closing. Nor does the Port pursue this position on appeal. Accordingly, we do not further consider this inconsequential issue.

## VII. ESCROW AGREEMENT CONSIDERATION

The Trust also argues that there was no consideration for the Trust's agreement to place $500,000 of the property's purchase price in escrow and, therefore, the escrow agreement was not a valid contract.[11] Again, the record does not support this argument.

We agree with the Trust that to be enforceable, a contract must be supported by consideration. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178, 94 P.3d 945 (2004). "Consideration is a bargained-for exchange of promises." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004). Generally, "[w]hether a contract is supported by

---

[11] The Trust's argument that there was no consideration for the escrow agreement does not correspond to an assignment of error or to a corresponding issue statement, as RAP 10.3(a)(4) and 10.3(g) require. Generally, we will review a claimed error only if it is included in an assignment of error. *Havlina v. Wash. State Dep't of Transp.*, 142 Wn. App. 510, 515 n.1, 178 P.3d 354 (2007). But we also construe the rules of appellate procedure liberally to promote justice and to facilitate the decision of cases on the merits. RAP 1.2(a); *Havlina*, 142 Wn. App. at 515 n.1. Therefore, we may consider issues that do not correspond to an assignment of error where (1) "'the nature of the appeal is clear,'" (2) "'the relevant issues are argued in the body of the brief,'" (3) "'citations are supplied so that the Court is not greatly inconvenienced,'" and (4) "'the respondent is not prejudiced.'" *Havlina*, 142 Wn. App. at 515 n.1 (quoting *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995)). Because the Trust's escrow agreement consideration argument meets these requirements, we consider its merits.

consideration is a question of law and may be properly determined by a court on summary judgment." *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 195, 840 P.2d 851 (1992). We do not agree with the Trust, however, that the escrow agreement here lacked consideration and was therefore unenforceable.

Here, the Trust allowed the Port to place $500,000 of the property's sale proceeds in escrow, subject to the Port's later claims for environmental cleanup costs within 5 years of closing. In exchange, the Port agreed to release the Trust from MTCA liability for any hazardous substances found on the property. Thus, formation of this escrow agreement included a bargained-for exchange of promises, including the requisite consideration. We hold, therefore, that the superior court did not err in granting summary judgment to the Port on this ground.

## VIII. COMPLIANCE WITH CR 56(h)

The Trust argues that we should reverse summary judgment to the Port because the superior court failed to comply with CR 56(h) when it did not include in its summary judgment order a list of all the documents it considered.[12] We reject the Trust's request, holding that even if the trial court erred in not listing every document on the summary judgment order, any error was harmless.

CR 56(h) provides: "The order granting or denying the motion for summary judgment *shall designate* the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered." (Emphasis added.). In its order denying the

---

[12] Again, the Trust's brief does not include an issue statement or assignment of error corresponding to the claimed CR 56(h) violation. Nevertheless, we again exercise our discretion to review this issue on the merits.

Trust's first summary judgment motion and in its order granting the Port's summary judgment motion, the superior court named specifically only 12 of the documents it had considered; but it also noted that it had considered these 12 documents together with "[a]ny other documents and pleadings on file in this case." CP at 425, 428. The Trust argues that because the superior court's summary judgment order listed only 12 of over 60 documents considered, we must reverse the summary judgment. We disagree.[13] The Trust's argument ignores the superior court's explicit statement, noted above, that it in addition to the 12 named documents, it considered "[a]ny other documents and pleadings on file in this case." CP at 425, 428.

Furthermore, the Trust cites no authority to support its argument that the summary judgment order's failure to list all documents specifically and individually requires us to reverse the order. On the contrary, where, as here, the documents the superior court referenced in general, but failed to name specifically, in its order are nevertheless included in the record before us on appeal, any error in failing to list those documents in the order is harmless.[14] *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 591, 973 P.2d 1011 (1999).

---

[13] We agree with the Trust that CR 56(h) requires the superior court to list every document it considered in an order granting or denying summary judgment. We disagree, however, with the Trust's claim that reversal is the remedy for this violation.

[14] Despite holding that the superior court's failure to list all documents does not require reversal here, we note that this holding does not relieve trial courts from complying with CR 56(h) and listing in summary judgment orders all documents called to the superior court's attention.

IX. TIMELINESS OF PORT'S CLAIM

The Trust next argues that the Port may not recover the escrow funds because it failed to make a claim against those funds within five years of the property's closing date, as the escrow agreement required. The record does not support this assertion.

The escrow agreement required the escrow funds to be disbursed to the Port if "within five (5) years of the 'Closing Date,'" the Port provided notice to the Trust that it had discovered hazardous substances on the property that had been on site before the closing date. CP at 229. The agreement further provided that if the Port had made no claim to the escrow funds by "the fifth (5th) anniversary of the Closing Date," these funds would be disbursed to the Trust on that date. CP at 230. The property's closing date was May 26, 2006; the Trust received notice of the Port's claim for reimbursement from the escrow funds five years later, on May 26, 2011. The Trust argues that (1) the Port lost its right to claim the funds at midnight on May 25, 2011; and (2) therefore, the Port could not recover the funds from the escrow account on May 26 because at that point, the funds belonged to the Trust.

The Port counters, and we agree, that it had until May 26, 2011, the fifth anniversary of the closing date, to make a claim to the escrow funds. When computing time from a particular date, the general rule excludes that start date. *See Perkins v. Jennings*, 27 Wash. 145, 149, 67 P. 590 (1902). Moreover, the plain meaning of the term "anniversary" connotes the same month and day in a later year. *See Webster's Third New International Dictionary* 87 (2002). We hold, therefore, that (1) the escrow agreement's five-year period began on May 27, 2006, and its five-year "anniversary" fell on May 26, 2011; (2) accordingly, the Port had until May 26, 2011, to make a claim to the escrow funds; (3) the Port's May 26, 2011 claim was timely under the

agreement; and (4) the superior court did not err in concluding as a matter of law that the agreement required the remaining escrow funds to be disbursed to the Port.

## X. PORT'S FAILURE TO COMPLY WITH 21-DAY NOTICE AND COMMENT PERIOD

The Trust makes four arguments about the Port's failure to comply with the escrow agreement's 21-day notice and comment period,[15] all of which fail. We address each in turn.

### A. No showing of guarantee

The Trust first argues that the escrow agreement was a "guarantee" that had to be strictly enforced according to its terms. Br. of Appellant at 26. We disagree.

The Trust does not specifically explain the effect of a guarantee on interpreting the escrow agreement here, contrary to RAP 10.3(a)(6). Instead, the Trust's brief cites basic guarantee principles and offers only the following argument:

> The escrow agreement is nothing more than a contract to answer for the debts, the guarantee of certain specific obligations of Marine View, Inc. The Trust never had any obligation to perform any remediation on the property nor did it have any independent liability for such needs or actions because any independent liability it might have had was released in the Purchase and Sale agreement.

---

[15] The pertinent portion of the escrow agreement provided:
> If within five (5) years of the "Closing Date" under the Purchase Agreement, the Port discovers . . . any hazardous substances . . . on the Property . . . the Port shall give notice to Marine View Inc. and the Trust (with a copy to Escrow Agent) of such discovery on the Property, which notice shall include a detailed estimate prepared by a qualified independent contractor qualified to contract with the Port of the cost to the Port to . . . remediate such hazardous substances. . . . After the Port furnishes the Trust and Marine View Inc., with notice of such discovery, Marine View, Inc. and the Trust shall each have a reasonable period of not less than 21 days . . . after receipt of notice from the Port . . . to comment upon the proposed remediation before work on said remediation shall commence.

CP at 229.

Br. of Appellant at 26. This argument does not persuade us to adopt the Trust's position. Therefore, we hold that there has been no showing that the escrow agreement was to operate as a guarantee along the lines that the Trust suggests.

### B. No condition precedent

The Trust next argues that the 21-day notice and comment period requirement in the escrow agreement was a condition precedent to the Port's making a valid claim against the escrow funds. Again, we disagree.

A condition precedent is an event that must occur before there is a right to immediate performance of a contract. *Tacoma Northpark, LLC v. NW, LLC*, 123 Wn. App. 73, 79, 96 P.3d 454 (2004). If the condition does not occur, the parties are excused from performance of the contract. *Tacoma Northpark*, 123 Wn. App. at 79. Determining whether the escrow agreement's 21-day notice and comment period was a condition precedent requires us to interpret the escrow agreement, a question of law, which we review de novo. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). Whether a contract provision is a condition precedent or a contractual promise "'depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances.'"[16] *Tacoma Northpark*, 123 Wn. App. at 79 (quoting *Ross*

---

[16] "[T]he intent of the parties to create a condition precedent may often be illuminated by phrases and words such as 'on condition,' 'provided that,' 'so that,' 'when,' 'while,' 'after,' or 'as soon as.'" *Lokan & Assocs., Inc. v. Am. Beef Processing, LLC*, 177 Wn. App. 490, 499, 311 P.3d 1285 (2013) (quoting *Ross v. Harding*, 64 Wn.2d 231, 237, 391 P.2d 526 (1964)). But such words are not required: "Any words which express, when properly interpreted, the idea that the performance of a promise is dependent on some other event will create a condition." *Ross*, 64 Wn.2d at 237.

*v. Harding,* 64 Wn.2d 231, 236, 391 P.2d 526 (1964)).

To assist in determining the parties' intent, we may apply the "context rule" adopted in *Berg v. Hudesman,* 115 Wn.2d 657, 666-69, 801 P.2d 222 (1990). This "context rule"

> "allows a court, while viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations."

*Roats v. Blakely Island Maint. Comm'n, Inc.,* 169 Wn. App. 263, 274, 279 P.3d 943 (2012) (quoting *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.,* 76 Wn. App. 267, 275, 883 P.2d 1387 (1994)). The context rule applies even when the provision at issue is unambiguous. *Roats,* 169 Wn. App. at 274. But "[w]here doubt exists as to whether parties have created a promise or an express condition, we should interpret the language in question to create a promise." *Lokan & Assocs., Inc. v. Am. Beef Processing, LLC,* 177 Wn. App. 490, 499, 311 P.3d 1285 (2013).

We generally give contractual language its ordinary, usual, and popular meaning. *Jensen v. Lake Jane Estates,* 165 Wn. App. 100, 105, 267 P.3d 435 (2011). "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective." *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.,* 173 Wn.2d 829, 840, 271 P.3d 850 (2012). Thus, "'[w]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.'" *Better Fin. Solutions, Inc. v. Transtech Elec., Inc.,* 112 Wn. App. 697, 712 n.40, 51 P.3d 108 (2002) (quoting *Byrne v.*

No. 43940-9-II

*Ackerlund*, 108 Wn.2d 445, 453–54, 739 P.2d 1138 (1987)).[17] The plain language of the escrow

agreement at issue here provided:

> If within five (5) years of the "Closing Date" under the Purchase Agreement, the Port discovers any construction debris or other material on the property which was not deposited pursuant to a valid permit, or discovers any hazardous substances (as defined by any federal, state or local law) on the Property which was not deposited or released onto the Property after the Closing Date, and such materials or condition are not within the scope of the Negotiated Cleanup Obligations, the Port shall give notice to Marine View Inc. and the Trust (with a copy to Escrow Agent) of such discovery on the Property, which notice shall include a detailed estimate prepared by a qualified independent contractor qualified to contract with the Port of the cost to the Port to remove such debris or other material or remediate such hazardous substances. Where practical, the Port shall attempt to obtain a fixed bid for such removal, remediation or resolution. After the Port furnishes the Trust and Marine View Inc., with notice of such discovery, Marine View, Inc. and the Trust shall each have a reasonable period of not less than 21 days with respect to hazardous substances, and 5 days with respect to debris or materials which are not hazardous substances, after receipt of notice from the Port (such 21- or 5- day periods to run concurrently) to comment upon the proposed remediation before work on said remediation shall commence, except in case of emergency threatening life or limb of persons on the Property or immediate destruction of the Property. Upon completion of the removal or remediation, as determined by certification of the qualified independent contractor to the Port, Marine View Inc., the Trust, and Escrow Agent, the Port shall be entitled to reimbursement out of the Escrow Funds held in the Escrow Account for the actual expenses incurred by the Port with respect to such activity, upon delivery to Escrow Agent, with copies to Marine View Inc. and the Trust, of a written demand, documenting the expenses paid by the Port.

CP at 229.

---

[17] If despite extrinsic evidence, a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations, the provision is ambiguous and we construe that ambiguity against the document's drafter. *Riss v. Angel*, 80 Wn. App. 553, 557, 912 P.2d 1028 (1996), *aff'd*, 131 Wn.2d 612, 934 P.2d 669 (1997); *Jensen*, 165 Wn. App. at 105. The Trust also argues that the environmental cleanup section of the escrow agreement was "clearly the Port's," and, therefore, we should construe any ambiguity against the Port. Br. of Appellant at 27. Because we do not find this language ambiguous, we need not construe it. But even assuming the language was ambiguous, we would construe it as creating a promise, not a condition precedent. *Lokan*, 177 Wn. App. at 499.

18

This portion of the escrow agreement contained two promises. First, the Port promised to provide 21 days notice to the Trust before remediating hazardous substances on the property. Second, the Trust agreed to allow the Port to be reimbursed from the escrow funds after remediation was completed. There is no language in the agreement, however, suggesting that the Trust's promise to allow release of the funds was dependent on the Port's providing pre-remediation notice.[18] Accordingly, we hold that the 21-day notice and comment period required by the escrow agreement was not a condition precedent to the Trust's release of the escrow funds to the Port.

## C. Time-of-the-essence clause

The Trust also contends that the escrow agreement's provision—"[t]ime is of essence of each and every provision of this Agreement"—bars the Port's recovery of the escrow funds. Br.

---

[18] Furthermore, the Trust cites no case law supporting its claim that the language at issue here creates a condition precedent. Instead, it makes two arguments about the parties' intent in drafting the escrow agreement, one of which finds no support in the record. First, contrary to the Trust's assertion, the Port's attorney did not state in a declaration that the 21-day comment period was a condition precedent to release of the funds. Instead, this declaration stated that (1) an October 2005 draft of the purchase and sale agreement had originally included a section explicitly prohibiting the Port from proceeding with removal or remediation until the work had been approved by Marine View; but (2) the Port had *rejected* this provision and it was removed from the final agreement.

Second, the Trust argues that the purchase and sale agreement's requirement of cost estimates before the Port commenced remediation work showed that the parties intended the escrow agreement's 21-day comment period to be a condition precedent to reimbursement from the escrow funds. The Trust does not cite to any particular portion of the purchase and sale agreement to support its argument. To the extent that the Trust intended to refer to the purchase and sale agreement provision addressing advance notice to the Trust of hazardous materials and remediation costs, this language similarly shows no intent that notice to the Trust of remediation cost estimates was a condition precedent to release of the funds. Moreover, the Trust fails to show why the existence of cost estimates as a condition precedent in the purchase and sale agreement would affect interpretation of the 21-day comment period in the escrow agreement in our condition precedent analysis.

of Appellant at 29 (internal quotation marks omitted). Because again the Trust does not develop an argument about why this clause bars recovery here, we do not further address this contention.[19] *See* RAP 10.3(a)(6).

### D. No injury; no equitable estoppel

The Trust further argues that equitable estoppel bars the Port's recovery of the escrow funds because the Port knew about the hazardous substances on the property as early as 2009 but failed to provide notice of its claims to the funds until 2011. Again, we disagree.

The elements of equitable estoppel comprise:

"(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) *injury* to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act."

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 340, 779 P.2d 249 (1989) (emphasis added) (internal quotation marks omitted) (quoting *McDaniels v. Carlson*, 108 Wn.2d 299, 308, 738 P.2d 254(1987)).

The Trust argues that the Port had a duty under the escrow agreement to provide notice to the Trust 21 days before conducting remediation work. Regardless of the Port's duty to inform the Trust of the existence of the hazardous substances and plans for remediation, the Trust failed to present any evidence that it was injured by the Port's failure to provide such notice. First, the

---

[19] We note, however, that the cases the Trust cites do not support its contention that the "time is of the essence" provision bars the Port's recovery of the escrow funds. Unlike the provision at issue here, *Olsen v. Northern S.S. Co.*, 70 Wash. 493, 127 P. 112 (1912) involved a condition precedent to performance. And *Mid-Town Ltd. P'ship v. Preston*, 69 Wn. App. 227, 848 P.2d 1268 (1993) and *Vacova Co. v. Farrell*, 62 Wn. App. 386, 814 P.2d 255 (1991) involved a party's failure to act within the time specified by the contract. Here, in contrast, the Port acted within the escrow agreement's fixed termination date by providing notice of its claim to the escrow funds to the Trust by the end of the five-year period.

requirement to give the Trust notice of planned remediation allowed the Trust only to comment on the Port's plan, not to prevent the Port from proceeding with remediation. Second, the Trust presented no evidence that it had a more cost-effective remediation plan or that its comments would have changed the nature or outcome of the Port's remediation efforts. Third, and most detrimental to the Trust's argument, the Port's remediation engineer testified that it was "inconceivable" that any comment the Trust could have made would have reduced the costs to less than the $490,000 available in the escrow account. CP at 867. On the contrary, this third uncontroverted fact shows that the Trust suffered no injury from the Trust's failure to provide notice of its remediation plans. Accordingly, we hold that the Trust's equitable estoppel argument fails.

In sum, none of the Trust's arguments about the Port's failure to comply with the escrow agreement's 21-day notice and comment period before undertaking remediation defeat the Port's right to the funds under the escrow agreement.

## XI. ATTORNEY FEES

The Trust also appears to argue that the superior court abused its discretion in awarding attorney fees to the Port below. Although the Trust devotes a section of its brief to its request for fees, in compliance with RAP 18.1(b), it cites no authority to support this argument; therefore, we decline to consider it.[20] RAP 10.3(a)(6).

The Port requests attorney fees on appeal under RAP 18.1 and under the escrow agreement. The escrow agreement provides that in any litigation between the parties to enforce

---

[20] Nevertheless, we note that because the Trust was not the prevailing party below, nor does it prevail on appeal, it would not be entitled to attorney fees under the escrow agreement.

No. 43940-9-II

the agreement, the prevailing party "shall be entitled to be reimbursed by the other Party for all of the reasonable legal fees and disbursements such prevailing party has incurred in connection with such litigation, including any appeal therefrom." CP at 232. Because the Port is the prevailing party on appeal, we grant its request for attorney fees.

We affirm the superior court's grant of summary judgment and its attorney fee award to the Port. And we award the Port attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, P.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

22