IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**
May 10, 2024 01:39 PM
SCT-CIV-2020-0030
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **FRANCISCO ANTONIO AGUEDA a/k/a FRANCISCO AGUEDA**<br>Appellant/Defendant,<br><br>v.<br><br>**ROSALINA MARCANO a/k/a ROSALINA M. CLAUDIO**<br>Appellee/Plaintiff. | ) **S. Ct. Civ. No. 2020-0030**<br>) Re: Super. Ct. Civ. No. 375/2014 (STX)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Robert A. Molloy

Argued: May 11, 2021
Filed: May 10, 2024

Cite as: 2024 VI 22

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

**APPEARANCES:**

**Martial A. Webster, Sr., Esq.**
Law Office of Martial A. Webster, Sr.
St. Croix, U.S.V.I.
  *Attorney for Appellant,*

**Yvette D. Ross-Edwards, Esq.[1]**
Law Offices of Yvette D. Ross-Edwards
St. Croix, U.S.V.I.
  *Attorney for Appellee.*

## OPINION OF THE COURT

**CABRET, Associate Justice**

---

[1] Judge Yvette Ross-Edwards was elevated to the bench and confirmed as a Judge in the Superior Court of the Virgin Islands, before the full senate, on June 14, 2023. Judge Ross-Edwards was sworn in on August 14, 2023. Attorney Kye Walker was substituted as counsel for the Appellee on July 31, 2023.

¶1     Rosalina Marcano ("Marcano") filed suit against Francisco Agueda ("Agueda") seeking a judgment for debt under a series of land sale contracts. Agueda also filed counterclaims against Marcano, alleging breach of contract and breach of the duty of good faith and fair dealing. The Superior Court entered judgment in favor of Marcano on her debt claim but also found that Agueda prevailed on his counterclaims.[2] Both parties separately filed timely appeals, which were consolidated into this single appeal on August 12, 2020. For the reasons discussed below, this Court will reverse the judgment below and remand this matter to the Superior Court to resolve the issue of damages.

## I.     FACTUAL & PROCEDURAL BACKGROUND

¶2     In 1989, Marcano and her husband at the time, Hernan Claudio ("Claudio"), and their construction business, United Development Corporation ("UDC"), purchased property on St. Croix in an area known as Western Suburb ("Property"). The Property consisted of nine improved land plots used as multifamily and business rental units. After Marcano and Claudio divorced, Claudio ceded ownership of the Property and the corporation to Marcano. Marcano then became the sole titleholder to plot numbers 6, 8B, 8C, 8D, 9, 9A, and 15 of the Property, while UDC remained the titleholder for plot numbers 7 and 8A.

¶3     In either 2008 or 2009, Marcano and Agueda met through one of Marcano's sons. Agueda described his early connection with Marcano as a close one, like a mother and son relationship. Shortly after they met, Agueda moved into Marcano's former apartment on the Property at her

---

[2] The Superior Court offset Marcano's debt claim by Agueda's counterclaims, ultimately ordering Agueda to pay $283,945 in damages and $31.12 per day in post-judgment interest.

invitation. Agueda also started operating a metal collection business from the Property around this time, although the exact date is unclear.

¶4 Soon, Agueda's metal collection business began generating profits and the parties decided to enter into an oral agreement for the sale of the Property. Marcano agreed to sell the Property to Agueda for $850,000, with a down payment of $70,000, another payment of $200,000 by December 1, 2010, and the remaining balance of $580,000 to be paid in three years. The parties also agreed that Agueda could start repairing the Property and collecting rent from tenants. The parties signed a handwritten agreement memorializing the 2009 oral agreement on August 2, 2010.

¶5 From 2009 to early 2011, Agueda made sporadic payments towards the purchase price but did not remain on a consistent payment schedule. The method of payment was inconsistent as well. Sometimes Agueda paid Marcano personally with cash or check; sometimes Agueda's wife, Aracelis Ruiz, would provide payment directly to Marcano's creditors at FirstBank or the Vilhelm Frederiksen Trust; and other times Agueda's business affiliates in Puerto Rico would give Marcano cash payments. Despite these inconsistencies, Marcano accepted payment because of her close personal relationship with Agueda. Agueda eventually fell behind on their agreed upon payment schedule, although he was still making large payments towards the purchase price. Agueda continued to operate his metal collection business, maintain the premises, improve the Property, and collect rent from tenants during this time.

¶6 In 2011, Agueda sought legal advice from Attorney Wilfredo Geigel ("Attorney Geigel") regarding the 2010 handwritten agreement. Attorney Geigel advised Agueda that the 2010 handwritten agreement was "worthless" and would be rejected by a court of law. Attorney Geigel met with the parties and drafted a new agreement with additional terms ("2011 Agreement"). The parties signed the 2011 Agreement – titled "Option to Purchase Contract" – on April 14, 2011;

however, both Marcano and Agueda testified to being displeased with certain aspects of the contract's terms.

¶7    The 2011 Agreement acknowledged that Agueda had paid $135,000 as a deposit towards the purchase price before its signing and further required him to pay an additional $115,000 either before or on the date of its signing. The 2011 Agreement also stated that: Agueda would make 36 monthly payments of $16,670 starting on April 1, 2011; Marcano would receive $5,000 of the monthly rental proceeds collected from the commercial and residential tenants on the Property until the purchase price was paid in full; a $500 late fee would be charged for rental payments made after the 15th of each month; and Agueda would be responsible for charges relating to the Property from the Virgin Islands Water and Power Authority, insurance, maintenance, and garbage collection at $1,215 per month.

¶8    The 2011 Agreement also contained provisions for closing. For closing to take place, Agueda was obligated to give Marcano 30 days' notice of his intention to render final payment in order to allow Marcano to prepare for the closing. Marcano had to provide free and clear title and she was responsible for the costs associated with closing. Once the final payment was made, either Agueda or Marcano could choose the date and time of closing by written notification. Should Marcano not correct any defects in title before the closing date, Agueda would be relieved of his obligations under the contract and his deposit was to be returned in full.

¶9    Following the execution of the 2011 Agreement, Agueda remained on an inconsistent payment schedule, he did not pay Marcano her agreed upon portion of rental proceeds or late fees, and he failed to insure the Property.[3]

---

[3] The delinquent taxes date back to 2008.

¶10    By late 2012 and early 2013, Agueda and Marcano's relationship, both business and personal, began to deteriorate. Agueda had yet to give Marcano any rent payments or late fees since signing the 2011 Agreement and he was struggling to make payments towards the purchase price altogether. Agueda's last attempt to make any payment towards the purchase price was a stopped check in 2013. According to Agueda, he stopped making payments when he realized Marcano did not have clear title to all nine plots of the Property. Due to Agueda's failure to make timely payments, Marcano directed one of the tenants, Cristina Anderson ("Anderson"), to pay her $500 monthly rent directly to Marcano, causing further strain on Agueda and Marcano's relationship.

¶11    In 2013, Agueda sought approval for a $350,000 loan from FirstBank to help pay off the remaining balance and to make further improvements to the Property. The parties' relationship finally reached a breaking point when FirstBank withdrew its commitment letter for the loan. Agueda testified that FirstBank withdrew its commitment letter due to Marcano's inability to provide proof of clear title to all nine plots of the Property, while Marcano contends that FirstBank withdrew its commitment letter due to criminal charges pending against Agueda at the time.[4] Once Marcano realized that Agueda would be unable to pay the remainder of the purchase price, she filed an action for forcible entry and detainer ("FED") on October 18, 2013 (SX-2013-CV-00345). The Magistrate Division dismissed the FED action on November 22, 2013, for lack of jurisdiction. After Marcano's unsuccessful FED action, Agueda has stayed in possession of the Property without paying rent, late fees, or the remainder of the purchase price.

---

[4] Agueda was arrested for possession of stolen property while his loan application was pending, but the charges were eventually dismissed.

¶12    On September 16, 2014, Marcano filed a complaint for breach of contract, fraud, quiet title, and declaratory judgment. (SX-14-CV-375). Marcano also asserted that she was entitled to judgment for debt and foreclosure under the 2011 Agreement. Agueda counterclaimed for breach of contract, negligence, breach of the duty of good faith and fair dealing, quiet title, declaratory judgment, and defamation of character. By June 18, 2018, the only remaining issues were Marcano's claim for debt, Marcano's request for appointment of a receiver,[5] and Agueda's counterclaims for breach of contract and breach of the duty of good faith and fair dealing.

¶13    A bench trial was held on June 5-8, 12-13, and 18-20 of 2018, and the Superior Court entered its findings of fact and conclusions of law on April 24, 2020. The Superior Court found that the 2011 Agreement was a valid contract supported by an offer, acceptance, and consideration. Further, the Superior Court held that Marcano properly demonstrated a basis for prevailing on her debt claim because Agueda had not paid the purchase price in full, nor had he transmitted any rental proceeds pursuant to the 2011 Agreement. Nonetheless, the Superior Court also held that Marcano breached the 2011 Agreement and her duty of good faith and fair dealing by collecting rent from Anderson directly as well as failing to provide clear title to all nine plots and impeding Agueda's ability to receive a loan. Based on Marcano's breaches, the Superior Court reduced her damages by denying to award missed rental payments or late fees past October 2013, reasoning that Agueda would have paid off the purchase price and would not have been obligated to pay monthly rent had he been able to close on the loan in 2013. In total, the Superior Court awarded Marcano $283,945, with post-judgment interest of $31.12 per day.[6]

---

[5] The Superior Court ultimately dismissed Marcano's request for appointment of receiver as well.

[6] The Superior Court calculated damages as follows:

¶14    Agueda filed an appeal on May 14, 2020, and Marcano's appeal followed soon after on May 22, 2020. Both appeals were consolidated into this single appeal on August 20, 2020.

## II.    JURISDICTION & STANDARD OF REVIEW

¶15    Title 4, section 32(a) of the Virgin Islands Code vests this Court with "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court or as otherwise provided by law." A final order conclusively adjudicates all disputes between the parties, ends the litigation on the merits, and leaves nothing to do but execute the judgment. *Brathwaite v. Xavier*, 71 V.I. 1089, 1095 (V.I. 2019). Because the Superior Court's April 24, 2020, judgment and order "conclusively adjudicated all disputes between the parties, it is a final order within the meaning of 4 V.I.C. § 32(a)." *Id.*

¶16    "Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error." *Alexander v. Alexander*, 65 V.I. 372, 377 (V.I. 2016) (citing *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012)). "Contract construction, that is, the legal operation of the contract, is a question of law mandating plenary review." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017) (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000)). Ordinarily, when the terms of a contract are unambiguous, the Superior Court treats the issue of the meaning of those terms as a question of law, but if the terms are ambiguous, the issue of the meaning of the terms becomes a question of

---

1.    The purchase price, $850,000, minus any payments Agueda was able to provide a receipt for. Agueda was able to provide receipts for $679,555 towards the purchase of Western Suburb, making his remaining balance towards the purchase price $170,445.

2.    The Superior Court added rental payments owed from April 2011 to October 2013, totaling $155,000.

3.    After adding the remaining balance and rental payments owed from 2011-2013, the Superior Court subtracted the amount of rental proceeds Marcano personally collected from Anderson, totaling $41,500.

fact. *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 708 (V.I. 2011). This Court "must accept the factual determination of the fact finder unless the determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Fawkes v. Sarauw*, 66 V.I. 237, 250 n.5 (V.I. 2017) (quoting *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)) (internal quotation marks omitted).

## III. DISCUSSION

### A. Overview of Issues

¶17 Both parties raise several interrelated issues on appeal. Agueda first argues that the Superior Court erred in awarding Marcano damages under a contract she breached. Agueda also argues that the 2011 Agreement is void for lack of consideration and only acknowledges the terms of the 2009 and 2010 agreements. Finally, Agueda contends that he is entitled to specific performance without further payments on the purchase price -- as he has already substantially performed under the contract.

¶18 On the other hand, Marcano disputes the Superior Court's finding of liability on her part as well as the Superior Court's assessment of damages. Marcano argues that she breached neither the contract nor her duty of good faith and fair dealing because she acted in accordance with the terms of the 2011 Agreement. Marcano asserts that, in fact, Agueda is the breaching party and therefore she is entitled to either full payment on the agreement or restitution of the Property, including costs and expenses.

¶19 The parties' arguments can be condensed into three issues for the purpose of this appeal: (1) whether the 2011 Agreement is an enforceable contract supported by sufficient consideration; (2) whether either party breached that contract; and (3) entitlement to damages. For the sake of

judicial efficiency, we will address Marcano's arguments first as this will allow us to resolve all issues raised on appeal simultaneously. Consequently, this Court will determine whether the Superior Court erred in holding that Marcano breached the 2011 Agreement and her duty of good faith and fair dealing.

## B. Breach of Contract

¶20     To establish breach of contract, a party must "demonstrate: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip*, 66 V.I. at 621. Each element will be discussed separately below.

### i. The 2011 Agreement

¶21     The Superior Court ruled that the 2011 Agreement was a valid and enforceable contract modification of the 2010 handwritten agreement. The Superior Court reasoned that the 2011 Agreement was supported by additional consideration aside and apart from that underlying the prior 2009 and 2010 agreements because Marcano gave Agueda additional time to make payments and complete the purchase of the property by April 14, 2014, and five new provisions were added to impose additional obligations on both parties. The Superior Court stated that Agueda, even if there were no consideration, is further estopped from asserting lack of consideration because he signed the 2011 Agreement with advice from his attorney and used the 2011 Agreement as a basis for dismissal of eviction proceedings and to obtain a loan commitment from the bank.

¶22     Although neither party disputes the existence of an agreement for the sale of the Property, both parties disagree as to whether the 2011 Agreement was a valid contract supported by adequate consideration and whether its additional terms should be binding. In his brief, Agueda argues that the Superior Court erred in finding the 2011 Agreement to be an enforceable contract modification because it imposed additional requirements on Agueda, while Marcano's obligations remained the

same under the 2009, 2010, and 2011 agreements. Agueda asserts that the 2011 Agreement, which added additional terms to the 2009 oral agreement and 2010 handwritten agreement, fails for lack of consideration because Marcano did not promise anything more than what was already promised in the prior agreements. This Court disagrees.

¶23    To assess the validity and enforceability of the 2011 Agreement, this Court must first discuss contract formation as it pertains to land sale contracts. We have previously stated that "a contract is only formed or modified to the extent there is mutual assent and mutual consideration." *Cornelius v. Bank of Nova Scotia*, 67 V.I. 806, 820 (V.I. 2017). Nevertheless, this Court has not expressly adopted a common law rule for contract formation. Ordinarily, a *Banks* analysis would be required to determine the soundest rule for the Virgin Islands; however, the elements of a valid contract are "so widely accepted and fundamental to the practice of law" that they most certainly represent the soundest rule for this jurisdiction. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014); *see also Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011).

¶24    In jurisdictions throughout the United States, the elements of an enforceable contract are an offer, acceptance of that offer, and consideration.[7] "In addition to offer, acceptance, and consideration, a valid contract requires that the parties assent to the same terms; that is, that they

---

[7] *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 960 A.2d 707, 709 (N.H. 2008) ("Offer, acceptance, and consideration are essential to contract formation."); *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 154 (Va. Ct. App. 2012) ("The basic elements of a contract are an offer, acceptance, and consideration.") (citing *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995)); *SH v. Campbell Cty. Sch. Dist.*, 409 P.3d 1231, 1233 (Wyo. 2018) ("The elements of a contract are offer, acceptance, and consideration."); *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885 (Wis. 2015) ("The elements of an enforceable contract are offer, acceptance, and consideration."); *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 689 (Ill. App. Ct. 2010) ("An enforceable contract is an exchange and its elements include offer, acceptance, and consideration."); *Gen. Conf. of the Evangelical Methodist Church v. Faith Evangelical Methodist Church*, 809 N.W.2d 117, 121 (Iowa Ct. App. 2011) ("It is fundamental that a valid contract must consist of an offer, acceptance, and consideration.").

have a meeting of the minds." *Tsiatsios v. Tsiatsios*, 663 A.2d 1335, 1339 (N.H. 1995); *P.O. Ventures, Inc. v. Loucks Family Irrevocable Tr.*, 159 P.3d 870, 875 (Idaho 2007) ("Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract."). "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885 (Wis. 2015).

¶25    This Court will primarily focus on the "consideration" element, as it is the subject of this appeal. As with the issue of contract formation, we have not adopted a definition of consideration. Once again, what constitutes consideration is so widely accepted, a *Banks* analysis in its entirety is unnecessary. *Machado*, 61 V.I. at 380. *See also V.I. Taxi Ass'n v. V.I. Port Auth.*, 2014 WL 12949501, at *5 (V.I. Super. Ct. Aug. 7, 2014) (unpublished) ("[T]he Supreme Court acknowledges that the basic elements of contract formation are such a straightforward part of the common law that they need not be analyzed further. The most basic prerequisite for the formation of a contract is that there was a mutual assent to a bargained for exchange in which one party made a promise in return for another promise. Therefore, a contract is formed in our jurisdiction by mutual assent and consideration.") (citing *Walters v. Walters*, 60 V.I. 768, 796-97 (V.I. 2014) (internal quotation marks omitted)). Before *Banks*, this Court briefly defined consideration as "bargained-for legal benefit and/or detriment." *Peppertree Terrace v. Williams*, 52 V.I. 225, 241 (V.I. 2009) (Swan, J., concurring) (citing *Navair, Inc. v. IFR Americas, Inc.*, 519 F.3d 1131, 1137-39 (10th Cir. 2008)). While the Superior Court never conducted a *Banks* analysis in its entirety, the Superior Court has long recognized the common-law definition of consideration as derived from Restatement (Second) of Contracts § 71, requiring a bargained for performance or a return

promise, which is bargained for if sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. *See Arvidson v. Buchar*, 72 V.I. 500, 520 (V.I. Super. Ct. 2020); *see also Castolenia v. Crafa*, 2014 WL 239427, at *2 (V.I. Super. Ct. Jan. 15, 2014). The performance may consist of either "an act other than the promise, a forbearance, or the creation, modification, or destruction of a legal relation." RESTATEMENT (SECOND) OF CONTRACTS § 71 (quoted in *Duvergee, Inc. v. Gov't of the V.I.*, 22 V.I. 56, 65-66 (V.I. Terr. Ct. 1986)).

¶26 Other jurisdictions similarly provide that consideration is generally "defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another." *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556 (W. Va. 2012).[8] In simpler terms, "[c]onsideration may consist of either a detriment to the promisee or a benefit to the promisor," *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012), that "has been bargained for and exchanged for a promise." *SH v. Campbell Cty. Sch. Dist.*, 409 P.3d 1231, 1233 (Wyo. 2018); *see also, e.g., Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 158 N.H. 104, 107-08 (N.H. 2008). "[T]here is ... consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a

---

[8] *Marshall Durbin Food Corp. v. Baker*, 909 So. 2d 1267, 1277 (Miss. Ct. App. 2005) ("A benefit to the promisor *or* detriment to the promisee is sufficient consideration for a contract. This may consist *either* in some interest, right, profit or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other."); *Lebedev v. Blavatnik*, 142 N.Y.S.3d 511, 517 (N.Y. App. Div. 2021) ("A valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other"); *Armstrong v. Collins*, 621 S.E.2d 368, 378 (S.C. Ct. App. 2005) ("Valuable consideration may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other."); *Solomon v. Greenblatt*, 812 S.W.2d 7, 15 (Tex. App. 1991) ("[S]ufficient consideration for the agreement may consist of some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss, or responsibility that is undertaken or incurred by the other party."); *Bus. Aviation, LLC v. Dir. of Revenue*, 579 S.W.3d 212, 218 (Mo. 2019) ("Valuable consideration is defined as "an equivalent or compensation having value that is given for something (as money, marriage, services) acquired or promised and that may consist either in some right, interest, profit, or benefit accruing to one party or some responsibility, forbearance, detriment, or loss exercised by or falling upon the other party.") (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2530 (2002)).

right to do, whether or not there is any actual loss or detriment to him or actual benefit to the promisor." *Omaha Nat'l Bank v. Goddard Realty, Inc.*, 316 N.W.2d 306, 310 (Neb. 1982).

¶27    Because the definition of consideration is "so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction ... maintaining these elements is unquestionably the soundest rule for the Virgin Islands." *Machado*, 61 V.I. at 380. Therefore, we conclude that consideration for a contract requires a bargained-for exchange in which a promisor makes a promise and a promisee either performs, foregoes an action, or makes a return promise.

¶28    Agueda argues that because the 2011 Agreement contained certain provisions that altered the terms of the 2009 and 2010 agreements, it was effectively a contract modification and was invalid for lack of consideration because Marcano did not promise anything more than what she had already promised in the 2009 oral agreement and the 2011 handwritten agreement. Marcano asserts that there was a bargained-for exchange in Agueda's request for and signature on the 2011 Agreement.

¶29    As an initial matter, the 2011 Agreement, a contract for the sale of real property, is governed by statutory requirements for land sale contracts under 28 V.I.C. § 242, part of the Virgin Islands' statute of frauds, which provides:

> Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

As a result, this Court is barred from enforcing any alleged oral contract for the sale of land unless the oral agreement is reduced to writing and signed by the party to be charged. 28 V.I.C. § 242.

See also *Downing v. Fortuna Bay Estates, Inc.*, 17 V.I. 20, 25 (Terr. Ct. 1980). "A note or memorandum may be sufficient under the statute of frauds in any number of forms, including a letter, an account statement, a draft or note, or a check." *Kelly-Stehney & Assocs. v. MacDonald's Indus. Prods.*, 693 N.W.2d 394, 399 (Mich. Ct. App. 2005). "A memorandum, by its very nature, is an informal instrument, and the statute of frauds does not require that it be in any particular form." *Hurdle v. White*, 239 S.E.2d 589, 592 (N.C. Ct. App. 1977) (holding that signature on the back of a check satisfied the writing requirement of the statute of frauds); *Cintron v. Andrews*, 7 V.I. 316 (D.V.I. 1969) (holding that a paper acknowledging receipt of $5,000 as a deposit to purchase real property was a sufficient note under the statute of frauds); *Reynolds v. Dixon*, 46 S.E.2d 6, 9-10 (Va. 1948) (explaining that "any kind of writing, from a solemn deed down to mere hasty notes or memorandum in books or papers," is a sufficient writing to satisfy the statute of frauds, and holding that a letter from the seller to the buyer was a sufficient writing); *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) (finding that multiple writings when taken together may satisfy the statute of frauds). "The statute of frauds [also] requires that contracts for the sale of land … not only be in writing and signed by the party who is to be charged, but the writing must contain all the material terms and conditions of the oral agreement between the parties." *Amdahl v. Lowe*, 471 N.W.2d 770, 774 (S.D. 1991). The contract "must set forth the terms of the agreement with sufficient certainty and definiteness, specifying the identities of the parties and their mutual assent, the property which is the subject of the contract, the price of such property, and the consideration." *Zurcher v. Herveat*, 605 N.W.2d 329, 336 (Mich. Ct. App. 1999); *see also Reynolds*, 46 S.E.2d at 9 ("[A] memorandum in writing meets the requirements of the statute of frauds . . . if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification."). In other words, the

writing "must describe the land, the price, and the contracting parties; it need not detail the form or delivery of deed, the time and place of payment, or any other matters." *Amdahl*, 471 N.W.2d at 774.

¶30　Here, the Superior Court was correct in finding that the parties had a legally enforceable contract for the sale of the Property; however, the Superior Court should have recognized that any oral agreements made in 2009 were void under 28 V.I.C. § 242. This error was ultimately harmless because the contract complied with 28 V.I.C. § 242 once Marcano and Agueda memorialized their oral agreement in the 2010 handwritten note, which contained both parties' signatures, the price of the Property, and a sufficient description of the Property. The bargained for exchange of land for money constitutes adequate consideration and the parties' mutual assent is represented by their signatures on the note as well as by Agueda taking possession of the Property and rendering partial payment. For this reason, we affirm the Superior Court's finding that the 2010 handwritten agreement is the original contract that became the basis for any subsequent modifications.

¶31　Like contract formation, contract modifications must be supported by consideration and a manifestation of mutual assent. *Cornelius*, 67 V.I. at 820; see also *Arvidson v. Buchar*, 72 V.I. 500, 520-21 (V.I. Super. Mar. 10, 2020). In the Virgin Islands, contracts may be modified with new, additional, or supplemental obligations to be fulfilled by the parties, subject to the same requirements as contract formation. *Smith v. McLaughlin*, 2019 V.I. LEXIS 180, *8-9 (V.I. Super. Ct. 2019) (unpublished). "[M]odification[s] to an existing contract must be supported by consideration independent from that which was given in order to form the original contract." *Lokan & Assocs. v. Am. Beef Processing, LLC*, 311 P.3d 1285, 1288 (Wash. App. 2013). "[I]ndependent consideration does not exist when one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract." *Id.* "When a party

agrees to do no more than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App. 2008).

¶32 The Superior Court found that the 2011 Agreement was supported by sufficient consideration because, despite Agueda's contentions, it imposed additional obligations on Marcano to provide free and clear title to the property and a legally acceptable description of the property, and contained new provisions describing what would occur if either party rejected an offer or if certain conditions made closing difficult. This Court agrees. Agueda vehemently asserts that Marcano's legal obligations remained the same under the 2009, 2010, and 2011 agreements, but this is simply not true. The 2011 Agreement clearly imposes additional obligations on Marcano, such as the obligation to pay off the mortgage on plots 8B, C, and D, the obligation to provide free and clear title to the nine plots, and the obligation to pay for and provide all legally required closing documents. Ironically, Agueda's counterclaims that Marcano breached her obligations by collecting rental proceeds directly from Anderson and failing to clear title, are based solely on Marcano's obligations in the 2011 Agreement, which were not present in the 2009 or 2010 agreements. This contradiction demonstrates that Agueda, at the least, implicitly acknowledges that the 2011 Agreement imposed additional requirements on Marcano that were not included in the 2009 or 2010 agreements.

¶33 Because we agree with the Superior Court that the imposition of additional duties on Agueda and Marcano constituted adequate consideration for the 2011 Agreement, the 2011 Agreement is an enforceable contract under Virgin Islands law and the Superior Court did not err when it made that determination. Once a modified contract is deemed enforceable, "[t]he modified contract is regarded as creating a new single contract consisting of so many of the terms of the

prior contract as the parties have not agreed to change, in addition to the new terms on which they have agreed." *Schwinder v. Austin Bank*, 809 N.E.2d 180, 189-90 (Ill. Ct. App. 2004). "[W]hen a contract is modified or amended by a subsequent agreement, any lawsuit to enforce the agreement must be brought on the modified agreement and not on the original agreement." *Id.* at 189. Said another way, a validly modified contract, as well as any of its additional or conflicting terms, replaces the original contract and becomes the controlling agreement. *Id.* Consequently, the 2011 Agreement contains the controlling terms upon which this Court will base the remainder of its decision.

### ii. Duty and Breach

¶34    Next, Marcano argues that the Superior Court erred when it found her to be the breaching party by failing to produce clear title to all nine plots during Agueda's loan application process. Marcano specifically argues that she did not breach the 2011 Agreement by failing to produce clear title because Agueda had not given her 30 days' notice of final payment, as required to close the sale under the 2011 Agreement. Marcano insists that the only party who breached the 2011 Agreement was Agueda, as he did not pay the remainder of the purchase price, rental income, and late fees.

¶35    As stated above, to prevail on a breach of contract claim, the parties must "demonstrate: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip*, 66 V.I. at 621. This Court has already established that the first element of this claim – that the parties had an agreement – was satisfied. Accordingly, this Court will now look to the duties created by the 2011 Agreement and whether those duties were breached. *Phillip*, 66 V.I. at 625. Where a contract is complete, clear, and unambiguous, the parties' intent is derived from the plain meaning of its terms. *Id.*

¶36     As a preliminary matter, this Court deems the 2011 Agreement unambiguous and will follow its plain meaning. *Phillip*, 66 V.I. at 625. The terms of the agreement are quite straightforward: Agueda agreed to pay $850,000 in exchange for free and clear title to all nine plots of the Property; Agueda was to pay $115,000 of the purchase price on or before the signing of the 2011 Agreement and the remainder of the purchase price was to be paid in 36-monthly installments of $16,670; Marcano would receive $5,000 of the monthly rental income until the purchase price was paid in full; and a $500 late fee would be imposed if payment was received after the fifteenth day of each month. Agueda was also obligated to give Marcano 30 days' notice of final payment, during which time Marcano was obligated to gather the appropriate documents for closing. Marcano was under no obligation to provide clear title or correct a defect in title until Agueda gave her 30 days' notice of final payment.

¶37     The Superior Court found that Marcano breached the 2011 Agreement terms and her duty of good faith and fair dealing when she failed to provide clear title to the properties, causing the bank to either deny Agueda's loan request or withdraw his loan commitment. We disagree on both grounds. First, under the explicit terms of the 2011 Agreement, Agueda had to give Marcano 30 days' notice of final payment and he failed to provide this required notice. It appears the Superior Court may have conflated closing on the loan with closing on the purchase of the Property when those were two separate transactions. Although the loan would have allegedly been used to pay off the purchase price and facilitate closing on the Property, Agueda was still obligated to provide 30 days' notice of final payment, and he never did so. Even if this Court were to assume that the loan closing and notice of final payment were the same, pursuant to the 2011 Agreement, Marcano was still not obligated to produce clear title until the closing took place following written notice by one of the parties, which, once again, was never done. As Agueda ceased payments in 2013 and never

gave Marcano 30 days' notice of final payment, Marcano was under no obligation to produce clear title and did not breach the parties' contract by failing to do so.

¶38     The Superior Court also erred in finding that Marcano breached her duty of good faith and fair dealing because she was aware of Agueda's loan request and acted in contravention of her obligation under the 2011 Agreement to eventually obtain clear title to the properties, causing Agueda to lose the loan commitment for failure to provide title or a deed to the properties. Every contract imposes an implied duty of good faith and fair dealing upon the parties. *Chapman v. Cornwall*, 58 V.I. 431, 441 (2013). "The duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations." *Id.* Specifically, "[g]ood faith means faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Matthews v. R&M Gen. Contractors, Inc.*, 72 V.I. 583, 594 (V.I. Super. Ct. 2020) (quoting *Guardian Ins. Co. v. Khalil*, 63 V.I. 3, 21 (V.I. Super Ct. 2012)) (internal quotation marks omitted). Therefore, to state a claim for breach of the implied duty of good faith and fair dealing, a party must allege that, in the performance or enforcement of an existing contract between two parties, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties. *Roebuck v. V.I. Hous. Auth. & Gov't of the V.I.*, 60 V.I. 137, 146 (V.I. Super. Ct. 2014) (quoting *LPP Mortgage Ltd. v. Prosper*, 50 V.I. 956, 960-61 (D.V.I. 2008)). The implied duty of good faith and fair dealing is limited by the original bargain ... prevent[ing] a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value. *See Basic Services, Inc. v. Gov't of the V.I.*, 71 V.I. 652,

663-64 (V.I. 2019) (citing *Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014)).

¶39     Courts in the Virgin Islands have held that, "where a duty of good faith arises, it arises under the law of contracts." *Abney v. Univ. of the V.I.*, 2016 U.S. Dist. LEXIS 59947, at *22-23) (D.V.I. May 3, 2016) (unpublished) (quoting *Mendez v. Coastal Sys. Dev., Inc.*, No. 05-0165, 2008 WL 2149373, at *3 (D.V.I. May 20, 2008) (unpublished) (citing *Jo-Ann's Launder Ctr. v. Chase Manhattan Bank, N.A.*, 29 V.I. 186 (D.V.I. 1995))). As in a breach of contract claim, damages suffered from acts in "unreasonable contravention of the parties' reasonable expectations under the contract" is an essential element of the duty of good faith claim. *See Dukes v. Fay Servicing, LLC.*, 2022 U.S. Dist. LEXIS 204948, at *11-12 (D.V.I. Nov. 20, 2022) (citing *Arvidson*, 71 V.I. at 336 and also citing *Merchants Commercial Bank v. VI F.F.O., LLC*, 2018 WL 4586346, at *3 (V.I. Super. Ct. Sept. 17, 2018) (unpublished) (noting that damages are a necessary component of a party's breach of the implied covenant of good faith and fair dealing claim)). Therefore, if a breach of the implied duty of good faith claim is based on a breach of contract claim, and the claimant cannot prove damages on the breach of contract claim, the claim for the breach of good faith and fair dealing must also fail. *Abney*, 2016 WL 2349108, at *22-23.

¶40     Here, the 2011 Agreement did not impose a duty on Marcano to provide clear title to the properties *before* receiving the required 30 days' notice for final payment to close on the property. It is true that that the duty of good faith and fair dealing would normally obligate Marcano to cooperate with Agueda's obtaining of the loan as a customary step in financing a real property purchase. However, considering the terms of the 2011 Agreement, Agueda's lack of purchase price payments since 2013, and Agueda's failure to provide 30 days' notice of final payment, it was unreasonable for Agueda to expect Marcano to produce clear title in support of Agueda's loan

application. Indeed, under the express terms of their agreement, Marcano's duty to provide clear title to the properties would only be triggered by Agueda's satisfaction of a condition precedent, specifically: Agueda providing Marcano with 30 days' notice of final payment. The record establishes that this condition precedent was never satisfied. For this reason, the Superior Court erred when it found that Marcano breached her duty of good faith and fair dealing by failing to provide clear title for the property.

¶41 The Superior Court also found that Marcano breached the 2011 Agreement and her duty of good faith and fair dealing by collecting rent from Anderson directly. Despite Agueda ceasing payments towards the purchase price in 2013, the Superior Court ordered that Marcano cease and desist from collecting any more rental payments from the tenants and offset those rental payment amounts Marcano collected against the amount of debt Agueda owes to Marcano. While it is true that Marcano's instructions for Anderson to make rental payments to Marcano directly was in contravention of the 2011 Agreement, Agueda suffered no damages as a result of Marcano's actions. Pursuant to the 2011 Agreement, Marcano was to receive $5,000 of the rental proceeds collected from the income properties until the purchase price was paid in full. The 2011 Agreement specified that Agueda was to collect rent from the tenants at the property and would submit $5,000 in monthly rental income to Marcano. Here, Marcano only collected $500 a month from Anderson, an amount far below the $5,000 she was due to receive every month, as Agueda failed to remit the $5,000 monthly rental income since 2013. Because Marcano collected rents directly from Anderson, Marcano's actions were in contravention of the 2011 Agreement. However, Agueda ultimately suffered no damages based on Marcano's actions, because the monies Marcano collected directly from Anderson partially offset the monthly rental payments that Agueda had agreed to pay to Marcano pursuant to the 2011 Agreement but that he had failed to pay. Therefore,

Agueda's breach of contract claim cannot be sustained. *See Phillip*, 66 V.I. at 621; *see also James v. Mosler*, 2021 V.I. LEXIS 25, at *30 (V.I. Super. Ct. 2021) (holding that the appellant could not satisfy the elements of his breach of contract claim because he was the breaching party and did not suffer damages); *Abney*, 2016 WL 2349108, at *22-23 (holding that because damages are a required element under a Virgin Islands breach of contract claim, a claimant's breach of contract claim failed when the claimant failed to identify any damages).

¶42 Overall, Marcano acted in accordance with the terms of the 2011 Agreement and the Superior Court erred when it found her to be a breaching party. Therefore, it was error for the Superior Court to find in favor of Agueda on his counterclaims given the complete disregard for his obligations pursuant to the 2011 Agreement. He never paid the purchase price in full by the agreed upon date, there is no evidence suggesting that he remained on the 36-month payment schedule, there is no evidence that he paid any rental proceeds or subsequent late fees to Marcano after 2011, and he did not insure the Property. Agueda seeks to conveniently avoid these legal obligations under the premise that the 2011 Agreement was not a valid contract; yet he also argues that Marcano breached that same agreement. Agueda cannot have it both ways. Therefore, we agree with the Superior Court that the 2011 Agreement is a valid contract, however, we conclude that Agueda breached that contract by failing to adhere to its terms. We also conclude that although Marcano acted in contravention of the 2011 Agreement by collecting rents directly from Anderson, Agueda did not ultimately suffer any damages from that collection, because those monies partially offset rental payments that Agueda had agreed to pay to Marcano pursuant to the 2011 Agreement, but which he had failed to pay.

### iii. Damages

¶43    Both parties contest the damages awarded by the Superior Court in this matter. Agueda insists that he substantially performed under the contract and is entitled to specific performance without further payments towards the purchase price; however, this Court has already determined that Agueda was the breaching party, and not Marcano. Further, Agueda has not suffered any damages as he has remained in possession of the Property without paying the purchase price in full and without paying Marcano anything since 2013. Marcano argues that she should be fully compensated for all debts Agueda was required to satisfy under the 2011 Agreement and this Court agrees.

¶44    "To state a common law claim for debt under Virgin Islands law, the plaintiff must allege that the defendant owes a certain amount and that the defendant is or should be obligated to pay that amount." *Carlos Warehouse v. Thomas*, 64 V.I. 173, 192 (V.I. Super. Ct. 2016). Marcano demonstrated that Agueda owes a certain amount under the 2011 Agreement, and he should be obligated to pay that amount. Both parties expressly acknowledge they had a contract for the sale of the Property and Agueda admits to not paying the purchase price in full. This Court affirms the Superior Court's findings that the 2011 Agreement was a valid contract, meaning that Agueda's debt includes missed rental payments and late fees as well. Since Agueda breached the 2011 Agreement and Marcano's actions did not cause any damages to Agueda, the Superior Court erred in reducing her damages award. From 2009 to present, Marcano has been deprived of the use of her property and its subsequent income without being properly compensated, while Agueda remains in possession. Marcano has proven her debt claim under the 2011 Agreement and is entitled to full compensation for debts due and unpaid.

## III.  CONCLUSION

¶45    The Superior Court committed reversible error when it found Marcano to be the breaching party and reduced her damages award on that basis. Marcano provided a proper basis for her debt claim through the 2011 Agreement and her behavior did not contravene the agreement's terms. Although Marcano acted in contravention of the 2011 Agreement by collecting rents directly from a tenant, she did not breach the 2011 Agreement because, for the reasons explained above, her actions did not ultimately result in any damages to Agueda. For this reason, Marcano is entitled to be compensated for the debts Agueda was required to satisfy under the 2011 Agreement, to the extent that those debts have not been offset by her direct collection of rents. This Court will reverse that portion of the Superior Court decision finding in favor of Agueda on his counterclaims and remand this matter to resolve the issue of Marcano's total damages. All proceedings on remand are to be consistent with the findings and conclusions in this opinion.

**Dated this 10th day of May, 2024.**

**BY THE COURT:**

**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** /s/ Reisha Corneiro
**Deputy Clerk**

**Dated**: May 10, 2024